Kolin Tang (SBN 279834)
**MILLER SHAH, LLP**
19712 MacArthur Boulevard, Suite 222
Irvine, CA 92660
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: kctang@millershah.com

Ronald S. Kravitz (SBN 129704)
**MILLER SHAH, LLP**
465 Montgomery Street, Suite 1900
San Francisco, CA 94104
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: rskravitz@millershah.com

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY NGUYEN, individually, and on behalf of all similarly situated participants,<br><br>Plaintiff,<br><br>v.<br><br>WESTLAKE SERVICES HOLDING COMPANY; WESTLAKE SERVICES HOLDING COMPANY EMPLOYEE STOCK OWNERSHIP PLAN; WESTLAKE SERVICES HOLDING COMPANY EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE; DON HANKEY; BRET HANKEY; IAN ANDERSON; PAUL KERWIN, EUGENE LEYDIKER, GRACIA ANG, and DOES 1 - 50.<br><br>Defendants. | Case No.: 8:23-cv-00854<br><br>**CLASS ACTION COMPLAINT** |

## I.    **INTRODUCTION**

1.     Plaintiff, Mary Nguyen("Plaintiff" or "Nguyen"), by and through her attorneys, files this action against Defendants, Westlake Services Holding Company ("Westlake"), the Westlake Services Holding Company Employee Stock Ownership Plan ("Plan" or "ESOP"), Westlake Services Holding Company Stock Ownership Plan Committee (the "Committee"),  the Committee members, Don Hankey, Bret Hankey, Ian Anderson, Paul Kerwin, Eugene Leydiker, and Gracia Ang (collectively, "Individual Defendants," with Westlake and the Committee, "Defendants"), and Does 1 – 50 (collectively, Defendants") alleges as follows:

## II.    **NATURE OF ACTION**

2.     This an action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1001 et seq., on behalf of a Class of former employee participants (and their beneficiaries) in the Plan.

3.     This case arises out of Defendants' violation of the terms of the Plan and/or abuse of their discretion in the management of the Plan and the interpretation of the Plan when they eliminated the right of Plaintiff and the Class to hold Westlake stock in the ESOP and required Plaintiff and the Class to liquidate their shares at an improper price. As a remedy, Plaintiff seeks to require Defendants to: (1) make good to the Plan, Plaintiff, and the Class members losses resulting from fiduciary violations; (2) restore to the Plan any profits that may have been made by the breaching fiduciaries and parties in interest through the use of Plan assets; and (3) obtain other appropriate equitable and legal remedies to redress violations and to enforce the provisions of Title I of ERISA.

4.     Plaintiff Mary Nguyen ("Plaintiff") was formerly employed by Hankey Investment Corp., an affiliate of Westlake, the sponsor of the Plan.  The proposed Class consists of terminated Employee Participants in the ESOP (and their beneficiaries) who, as alleged below, have been deprived of promised benefits as a result of violations of ERISA by Defendants.  "Terminated Employee Participants" are ESOP participants with vested

CLASS ACTION COMPLAINT

account balances whose employment with Westlake or any of its affiliates was terminated during the first quarter of 2020.

5.      The Plan's primary asset is its equity holdings in Westlake stock.  The ESOP allocates shares of Westlake stock to the individual accounts of Plan participants.  The Plan has long been an important part of the compensation package for employees of Westlake and its affiliates.  Plaintiff and other members of the Class contributed to Westlake's success and were able to share in that success as the value of the Westlake stock holdings in their individual ESOP accounts grew over time.

6.      Under the terms and practice of the effective written instrument of the Plan, the Plan permitted Terminated Employee Participants to continue to hold Westlake stock in their Plan accounts until the second quarter of the year following their employment. Segregation of Westlake stock occurred in the Plan year following termination of employment based on the valuation of the Westlake stock at the end of the year of termination.

7.      Until at least June 2020, Plaintiff and over 100 Terminated Employee Participants continued to hold their Westlake stock after terminating employment.  In recent years, the share price of the Westlake stock has risen significantly.  In June 2020, Defendants forced Plaintiff and other Terminated Employee Participants to sell their Westlake stock, closed their individual accounts, and transferred their liquid assets out of the ESOP ("forced sale" or "forced buyout").  This forced sale violated ERISA and breached promises Defendants had made to Plaintiff and other Terminated Employee Participants.  In addition, Defendants used a stale and improper special valuation to set the share price for the Westlake stock in the sale.

8.      Plaintiff and other Terminated Employee Participants were divested of the benefit and right to continue to hold the Westlake stock in their Plan accounts.  As a result of Defendants' fiduciary breaches and violations of ERISA, Plaintiff and the Class received less than the fair market value of their Westlake stock in the force sale and have lost out on

CLASS ACTION COMPLAINT

the continued appreciation of the Westlake stock, dividends, and distributions paid to Westlake shareholders in 2021.

### III.    PARTIES

9.    Plaintiff is a resident of Westminster, California.  She began her career with Defendants in 2004 and was a participant in the Plan from 2011 through June 2020.

10.    The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34).  The Plan is established and maintained under a written document in accordance with 29 U.S.C. § 1102 and serves as a vehicle for retirement savings and to produce retirement income for employees of Westlake and Westlake affiliates.  The Plan also is an ESOP under ERISA Section 407(d)(6) that was intended to meet the requirements of Section 4975(e) of the Internal Revenue Code ("Code") and IRS Regulations Section 54.4975-11.

11.    Westlake is the named Plan Administrator of the Plan, and thus a fiduciary to the Plan under ERISA.

12.    Westlake is a technology-based, privately held finance company that specializes in the acquisition and servicing of prime to subprime automotive retail installment contracts.  It also offers a portfolio of acquisition services and direct consumer loans through its wholly-owned subsidiary, Wilshire Consumer Credit, LLC. Headquartered in Los Angeles, California, Westlake finances contracts through a network of over 50,000 new and used car dealerships throughout the United States.  Westlake currently has more than 1,200 employees, with 1,000 employees located at the Los Angeles corporate headquarters.

13.    Formed in August 1988, Westlake is the financial services arm of the Hankey Group, which is based in Los Angeles and has ownership interests in a number of automotive-industry related companies.  The Hankey Group also includes, among other companies, a real estate firm, a Toyota dealership, and auto insurance, rental car and dealer software businesses.  Each Hankey Group company holds a symbiotic relationship to the

3

other. HFC Acceptance, a fleet finance and leasing company, focused on commercial financing to rental agencies that purchased vehicles from Midway Ford. Nowcom's DealerCenter provides a multi-lender and DMS platform for used car dealerships, featuring Westlake Financial as a preferred lender. Additionally, Nowcom provides IT support for all Hankey Group companies. Hankey Investment Company is a private real estate investment firm that procures real estate for Hankey Group and manages around $2.2B in assets, comprised of real properties ($1.87B) and commercial loans ($1.356B). Since 1985, Knight Insurance Company, a Cayman Islands company, together with its domestic affiliates KnightBrook Insurance Company and Knight Specialty Insurance Company, have partnered with North Hollywood Toyota, Westlake Financial and Midway Auto Group to provide consumers with various auto-related insurance products and services. Defendant Don Hankey presides over the Hankey Group and Westlake.

14.    As of December 31, 2019, Westlake had 104,189,553 ownership units issued, with the Westlake board of directors and Plan fiduciaries holding significant shares: Don Hankey (8.97%); Bret Hankey (1.03%); Ian Anderson (0.78%); and Paul Kerwin (0.51%). Don Hankey is sole Trustee of the Plan ("Trustee Defendant").

15.    Upon information and belief, in or around July 2020, Westlake, through its Board of Directors, Individual Board Defendants Don Hankey, Ian Anderson, and Paul Kerwin appointed Defendant Committee in or around July 2020.

16.    The Committee consisted of the Individual Committee Defendants: Don Hankey, Ian Anderson, Paul Kerwin, Eugene Leydiker, and Gracia Ang.    The appointment and delegation of responsibility conferred Westlake's fiduciary obligations on to the Individual Defendants with respect to their review of the Plaintiff's benefits claim.

17.    Plaintiff presently does not know the names or capacities of other defendants for the wrongdoings described in this Complaint, and sues such defendants under the fictitious names Does 1 through 50, inclusive.

CLASS ACTION COMPLAINT

### III.    JURISDICTION AND VENUE

18.    This Court has jurisdiction pursuant to ERISA Sections 502(e) and (f), 29 U.S.C. § 1132(e) and (f) and 29 U.S.C. § 1131.

19.    Venue is proper in this District pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391 because the Plan is administered in this District, the breach or violation took place in this District, and one or more Defendants reside in this District.

### IV.    FACTUAL ALLEGATIONS

**A.    Background**

20.    Westlake established the Plan on or about January 1, 2001.

21.    The Plan is an employee stock ownership plan with a Code section 401(k) element covering all Hankey Group employees, except for collective bargaining employees. The Hankey Group consists of Westlake Services Holding Company, Westlake Services, LLC and its affiliates: TNH Motors, Inc., Midway Rent-A-Car, Inc., Nowcom, LLC, Hankey Investment Company, LP, HFC Acceptance, LLC, Knight Management Services, LLC, Western Funding, Inc., Westlake Portfolio Services, Inc., CU Leasing Corp. and Conrad Staffing Services, LLC (collectively, "Companies"). The Plan is designed to comply with Section 4975 (e)(7) and the regulations thereunder of the Internal Revenue Code of 1986, as amended ("IRC"), and is subject to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Hankey Group also sponsors the HG 401(k) Plan, a defined contribution plan. The Plan is administered by an administrative committee. The Trustee of the Plan is Don R. Hankey.

22.    The Plan is a defined contribution plan under which a separate individual account is established for each participant. Each participant's account is credited as of the last day of each Plan year with an allocation of each participant's individual contributions, employer discretionary matching contributions, and Plan earnings and expenses. Only those participants who are employees of the Companies as of the last day of the Plan year

are eligible to receive an allocation of Company matching. Plan earnings are allocated to each participant's account in proportion to the balances of all participants' accounts.

23.    In 2011, Westlake Services Holding Company ("Company") was created to acquire common shares of Westlake Services, LLC. The exchange of Westlake Services, LLC shares for Company common shares was done on a one-for-one basis.

24.    Upon information and belief, in 2013, Westlake amended and restated the Plan ("2013 Plan").

25.    The 2013 Plan did not authorize Defendants perform a special valuation of the company stock or mandate the segregation of participants accounts during the year in which they terminated their employment.

26.    Upon information and belief, from the inception of the Plan, under the terms of the Westlake ESOP Plan Rule for segregation (defined further below), the Plan would segregate and distribute or rollover the balance of the accounts of terminated Plan participants in the second quarter of the year following the termination of employment. The Plan never segregated or distributed the account balances of the participants in the same year of the termination of employment of the participant.

27.    To amend the Plan, Section 14(c) of the 2013 Plan required the Board to prepare a written resolution of the Board.  Upon information and belief, at no time did the Board prepare a written resolution to amend the 2013 Plan prior to the termination of Plaintiff.

28.    On or about January 21, 2020, the Company received its valuation report for the Plan, concluding the fair market share value of Westlake stock was $39.70 ("2019 Fiscal Year Valuation").

29.    The Plan then issued Plaintiff a Participation Statement for the year ending December 31, 2019 (the "2019 Statement") based on the 2019 Fiscal Year Valuation, stating Plaintiff had an accrued vested Plan Benefit of $241,053.91

30.    On February 3, 2020, Plaintiff resigned from Hankey Investment Company. At or around the time of Plaintiff's resignation, Defendants provided a document entitled Benefit Information Post Termination ("Benefit Information") that represented that Plaintiff would not receive her rollover package until the 2021 and set forth the Westlake ESOP Plan Rule for segregation ("ESOP Plan Rule"):

"**Termed participants will not receive a distribution/rollover package until after the plan year when the employment termination occurs**. Participants terminating will receive the option for distribution/rollover after the current plan year ends, sometime in the 2nd quarter of the following year. The 3rd party administrator will prepare the distribution/rollover package to be mailed shortly after the annual statements….

**The Westlake ESOP Plan Rule set forth is that termed participants are eligible to receive their distribution after the plan year that employment termination occurred has ended.** (Emphasis added) E.g. participants termed in year (2016), qualify to receive their distribution after plan year 2016 ends. A distribution package is sent to terminated employees, the following year in the 2nd quarter of year (2017). Distribution packages are mailed to former participants after the annual valuation is complete and statements are generated. The former employee needs to inform their former employer with their new address.

**The ESOP Plan valuation is on an annual basis after the current plan year ends.**

31.    Based on the 2013 Plan and the ESOP Plan Rule in effect at the time of her resignation, Plaintiff's shares in the ESOP were to be distributed in the second quarter of 2021 and calculated using the December 31, 2020, valuation of the ESOP's shares and in accordance with the ESOP Plan Rule regarding valuation and segregation after the year the participant terminated employment. At no time prior to May 21, 2020, did Defendants disclose that they had attempted to amend the 2013 Plan or that there was a change in the ESOP Plan Rule regarding segregation. Had Plaintiff known that Defendants had changed

the Westlake ESOP Plan Rule to discriminate against those participants who terminated their employment in the first quarter of 2020, Plaintiff would not have resigned during the first quarter of 2020.

32.    In March 2020, the spread of COVID 19 impacted the economy.    The Individual Defendants, which include Don Hankey and other Westlake officers, took advantage of the chaos and abrupt downturn of the stock market to call for a special valuation of the Westlake stock believing that it would result in approximately a 30% reduction in the value of the shares of the Terminated Employee Participants and a corresponding reduction in the repurchase obligations of Westlake and/or the Plan. In doing so, Defendants cut the accrued and vested benefits of Plaintiff and the Class by almost 30%.  By cutting the benefits, the Individual Defendants, who also held significant numbers of Westlake shares through the Plan, benefited from the reduced repurchase obligations of Westlake.

33.    Upon information and belief, on or about March 31, 2020, Westlake distributed dividends to certain participants in the Plan representing their share of the 2019 dividends received by the Plan.  Upon information and belief, the Plan used a portion of the distribution dividends to purchase additional shares of company stock for 39.70 per share based on the December 31, 2019 valuation.

**B.    2019 Plan**

34.    Upon information and belief, in or around late 2019 or 2020, Westlake prepared a draft 2019 amended and restated Plan.  ("2019 Plan"). At all relevant times, Defendants concealed the existence of the draft 2019 Plan from Terminated Employee Participants and failed to disclose the intent to amend the 2013 Plan or the ESOP Plan Rule regarding segregation.  Upon information and belief, there never was a written resolution of the Board of Directors to amend the 2013 Plan, and the draft 2019 Plan never became effective.

CLASS ACTION COMPLAINT

35.    The draft 2019 Plan included, for the first time, a provision to authorize the Plan Administrator, at its sole discretion, to conduct a special valuation under "extraordinary circumstances:

> 2.82 "Valuation Date" except as provided in Section 7.11 with respect to Segregation of Accounts, means the last day of the Plan Year. Valuations of Company Stock shall be made pursuant to Section 9.10. Notwithstanding anything herein to the contrary and in the event that a Participant is to receive a distribution from the Plan, the Plan Administrator may in its sole discretion declare a special Valuation in extraordinary situations to protect the interests of Participants in the Plan or the Participant receiving the distribution. Such extraordinary circumstances include a significant change in economic conditions or market value of the Trust Fund.

36.    The draft of the 2019 Plan also included an amended ESOP Plan Rule that discriminated against those participants who terminated their employment in the first quarter of 2020 by requiring mandatory segregation in 2020 of the accounts of Participants who terminated their employment in the last three quarters of 2019 and the first quarter of 2020, specifically referencing the prior ESOP Plan Rule mandating segregation the year following termination:

> Section 7.11 SEGREGATION OF ACCOUNTS Effective January 1, 2020, the accounts of Participants who terminate employment in the first quarter of a Plan Year shall be segregated along with the accounts of those who terminated in the last three quarters of the prior Plan Year. Prior to the 2020 Plan Year account segregation occurred in the Plan Year following termination of employment.

## C.    March 31, 2020 Special Valuation

37.    Upon information and belief, on March 30, 2020, without any investigation or process, Individual Defendants decided that the value of the Westlake stock had

CLASS ACTION COMPLAINT

substantially decreased by as much as 30% since the valuation report for the year-ending December 31, 2019, which it had received two months earlier on January 21, 2020.

38.    Upon information and belief, prior to the Special Valuation, Defendants believed that there would have additional benefit distributions in 2020, requiring in excess of $80 million in cash to repurchase the company stock and pay the benefits to the Terminated Employee Participants.

39.    Upon information and belief, on April 1, 2020, the Committee engaged KPMG, the auditors for the Plan and Westlake, to perform a report for the Plan's Special Valuation.

40.    Upon information and belief, on April 22, 2020, as forecasted by Don Hankey on April 4, 2020, KPMG provided the Board with its Special Valuation report, reflecting approximately a 30% drop in the fair market value of the ESOP shares from $39.70 to $28.10 per share.  The justification for the reduced value was based, in part, on Company financial projections provided by some of the Individual Defendants to KPMG.

**D.    Disclosure of Special Valuation and Amended Segregation Rule**

41.    By letter dated on or about May 21, 2020, Defendants disclosed to Plaintiff and the class, for the first time, that their Plan statements had been updated to reflect the new stock value with earnings/losses adjustments based on an ESOP value dated March 31, 2020 and that former employees waiting to receive their distributions could expect their distribution calculations to be based on vested balances as of March 31, 2020 ("May 21 letter").

42.    By letter dated May 26, 2020, Defendants informed that she was entitled to receive a lump-sum payment of $190,191.02 ("May 26, 2020 letter"). In violation of the long-standing ESOP Rule regarding segregation, the letter further stated that Plaintiff and other Class Members had to make a distribution election between a lump sum distribution from the ESOP, or a rollover to an IRA or another qualified employer plan, and that if the Terminated Employee Participants did not make a distribution election, then the ESOP

would transfer the proceeds from the forced sale of their Westlake stock to a portfolio of investment that did not included Westlake stock:

> Since your benefit listed above is greater than $5,000, **you must also consent to receive a distribution. If we don't receive the Election form within the prescribed period of time, your vested account balance will remain in the Plan. However, it will be invested in a balanced portfolio of investments that does not include Company stock.** Your vested account balance will be paid to you upon attainment of age 65 or at such earlier time as you may properly make a written request for distribution.  (Emphasis added.)

43.    At the time Defendants forced Plaintiff and the other Class Members to sell their Westlake stock, Defendants knew or should have known that recent developments had made the Westlake stock an excellent investment as the value of the stock was steadily increasing.  The mandatory segregation and distribution requiring the repurchase of Westlake stock at the March 31, 2020, Special Valuation price  deprived Plaintiff and the Class Members of the market recovery that commenced soon after the Plan received the Special Valuation as of March 31, 1 2020 and any dividends that would have been distributed to Plaintiff and the Class in  2021 to Plaintiff and the Class Members based on the December 31, 2020 annual valuation.

44.    The change in the ESOP Plan Rule solely was intended to discriminate and did discriminate against those participants who were terminated in the first quarter of 2020, depriving them of the benefit of the market recovery that commenced soon after Defendants approved the Special Valuation plus any dividends that may have issued in  the first quarter of 2021.

45.    In June 2020, pursuant to the May 26, 2020 letter, the Plan paid Plaintiff $190,191.02.  Prior to the June distribution, Defendants knew or should have known that the March 31, 2020 share price was less than fair market value as of the date of the distribution.

11

46.    Upon information and belief, from April 1 through the date of the June repurchases and distributions, Defendants failed to consider or evaluate the stock market rebound, improved financial condition of Westlake, and generally improved market conditions and its impact on the value of Westlake shares from March through June 2020. Nor did Defendants consider or conduct a special valuation in light of the rapid and extraordinary market recovery and continued success of Westlake despite the COVID-19 pandemic.

47.    The stock market recovered quickly after the completion of the Special Valuation.  From December 31, 2019, through June 30, 2020, of the S&P 500, the Dow Jones Industrial Average and the comparable publicly traded companies used in the December 31, 2019, valuation report almost immediately started to recover and continued to improve through the year.  By November 24, 2020, the Dow Jones Industrial Average closed above 30,000 for the first time in its history.  By December 31, 2020, the Westlake share price had increased 49% to $41.95 a share.

48.    Individual Defendants operated under a conflict of interest in valuing Westlake stock held by Plaintiff and other Class Members in the June 2020 forced buyout because, upon information and belief, they had significant investments in Westlake stock both inside and outside of the ESOP, and a lower purchase price for the Westlake stock held by Plaintiff and the Class benefited the value of the value of their own shares. Notwithstanding these conflicts of interest, Defendants did not retain an independent fiduciary or obtain additional valuations.

49.    Plaintiff and other Class Members received less than the fair market value for their Westlake stock sold in the June, 2020 forced sale.

50.    As a result of the purported amendment to the ESOP Plan Rule, Plaintiff and the Class were divested of the right, at their option, to continue to hold Westlake stock in the ESOP until the second quarter of 2021.  Additionally, Plaintiff and the Class Members

have lost out on the investment gains from the continued rise in the value of Westlake stock and the dividends and distributions paid.

**E.    The Denial of Plaintiff's Administrative Claim and Appeal**

51.    Under Section 17(d) of the 2013 Plan, participants may make an application for benefits and may appeal a denial of benefits.    However, the Plan does require participants to exhaust administrative remedies prior to filing a lawsuit.

52.    On or about August 2, 2022, Plaintiff submitted her administrative claim for benefits seeking his vested and accrued benefits based on the 2020 Fiscal Year Valuation ("Benefits Claim"), challenging the use of the Special Valuation and improper amendment to the Westlake ESOP Plan Rule on which Defendants relied to reduce her benefits after she resigned from Westlake.

53.    On or about October 27, 2022, the Committee denied Plaintiff's Claim.    On or about October 31, 2022, the Committee issued a supplemental denial of Plaintiff's claim.

54.    In denying the claim, the Committee failed to acknowledge the improper and ineffective plan amendments on which they relied to deny the claim, the discrimination against only those participants who terminated their employment in the First Quarter of 2020, or the improper efforts to reduce their repurchase obligations  caused by the terminations of participants with shares valued in excess of over  $80 million in one year.

55.    On or about December 14, 2022, Plaintiff appealed the denial of her benefits claims, asserting the Committee violated the terms of the Plan, breached their fiduciary duties, and abused their discretion in denying her claims.

56.    On or about February 10, 2023, the Committee arbitrarily denied the appeal., primarily based on the terms of the ineffective 2019 Plan, the improper Special Valuation, and the arbitrary change to the segregation rules designed to discriminate against the Participants whose employment was terminated in the first quarter of 2020.

CLASS ACTION COMPLAINT

# V. ERISA'S FIDUCIARY STANDARDS

57.    ERISA Section 404(a)(1) 29 U.S.C. § 1104(a)(1) provides, in relevant part, that:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan.

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

# VII.  CLASS ALLEGATIONS

58.    This action is brought as a class action by Ms. Nguyen on behalf of herself and on behalf of the Class, defined as follows:

All former participants of the Plan whose employment with Westlake or any of its affiliates was terminated during the first quarter of 2020 with account balances greater than $5,000 and the beneficiaries of such participants ("Class").

Excluded from the Class are the Defendant Trustees and members of the Defendant Committee and their families; the officers and directors of Defendant Westlake and their immediate families, and legal representatives, successors, heirs, and assigns of any such excluded persons.

59.    This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

60.  <u>Numerosity</u>.  Plaintiff is informed and believes that there are more than 100 former Plan participants who would be members of the Class.  Although the exact number and identities of Class Members are unknown to Plaintiff at this time, this information is easily ascertainable from the Plan through discovery of its records.

61.  <u>Commonality</u>.  There are numerous questions of fact and/or law that are common to Plaintiff and Class members, including, but not limited to the following:

- Whether Defendants breached a fiduciary duty to the Class by failing to administer the Plan in a uniform nondiscriminatory manner for the exclusive benefit of the Participants and their Beneficiaries.

- Whether Defendants breached a fiduciary duty to the Class by administering the Plan under the  ineffective  2019 Plan;

- Whether Defendants breached a fiduciary duty to the Class by performing a special valuation as of March 31, 2020;

- Whether Defendants breached a fiduciary duty to the Class by using a stale and unreliable valuation of Westlake stock for the forced sale;

- Whether the Class received less than fair market value for their Westlake shares in the forced sale;

- Whether Defendants engaged in a prohibited transaction in connection with the forced sale in June 2020;

- Whether Defendants violated ERISA's anti-cutback provision, ERISA Section 402(g), by eliminating the benefit entitlements of Terminated Employee Participants in the amendment to the ESOP Plan Rule;

- Whether Defendants breached a fiduciary duty to the Class by determining the benefits of the Class based on a stale and outdated valuation;

- Whether Defendants breached a fiduciary duty to the Class by failing to follow ESOP Plan Rule requiring participants to receive their distributions in the

CLASS ACTION COMPLAINT

second quarter of 2021, the year after the plan year that employment termination occurred, has ended based on the December 21, 2020 valuation.

- Whether Defendants abused their discretion by arbitrarily changing the ESOP Plan Rule to require the Special Valuation and/or amend the ESOP Plan Rule to force the sale in 2020 of all shares of Westlake stock of participants terminated in the first quarter of 2020;The losses suffered by the ESOP and the Terminated Employee Participants as a result of Defendants' ERISA violations and/or abuses of discretion;

- The appropriate form of relief that should be afforded to Plaintiff and the Class.

62.    <u>Typicality</u>.  Plaintiff, a member of the Class, has claims that are typical of all of the members of the Class.  Plaintiff's claims and all of the claims of the members of the Class arise out of the same uniform course of conduct by Defendants and arise under the same legal theories that are applicable to all other members of the Class.

63.    <u>Adequacy of Representation</u>.  Plaintiff will fairly and adequately represent the interests of the members of the Class.  Plaintiff has no conflicts of interest with or interests that are any different from the other members of the Class.  Plaintiff has retained competent counsel experienced in class action and other complex litigation, including class actions under ERISA.

64.    <u>Predominance</u>.   Common questions of law and fact predominate over questions affecting only individual members of the Class, and the Court, as well as the parties, will spend the vast majority of their time working to resolve these common issues. Indeed, the only individual issues of significance will be the exact amount of damages recovered by each Class member, the calculation of which will ultimately be a ministerial function and which does not bar certification.

65.    <u>Superiority</u>.  A class action is superior to all other feasible alternatives for the resolution of this matter.  The vast majority, if not all, of the members of the Class are

unaware of Defendants' breaches of fiduciary duty such that they will never bring suit individually. Furthermore, even if they were aware of the claims they have against Defendants, the claims of virtually all members of the Class would be too small to economically justify individual litigation. Finally, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

66.    <u>Manageability</u>. This case is well suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a Class-wide basis, while the allocation and distribution of damages to members of the Class would be essentially a ministerial function.

67.    Defendants have acted on grounds generally applicable to the Class by uniformly subjecting Class members to their policy of refusing to apply their deferral elections to their reported tips. Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

68.    Class certification of Plaintiff's claims for relief for violations of ERISA is appropriate pursuant to Fed.R.Civ.P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would be as a practical matter be dispositive of the interests of non-party Class members.

69.    Class certification of Plaintiff's claims for relief for violations of ERISA is appropriate pursuant to Fed.R.Civ.P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The members of the

Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations.

70.     Additionally, and alternatively, class certification of Plaintiff's claims for relief for violations of ERISA is appropriate pursuant to Fed.R.Civ.P. 23(b)(3) because questions of law and fact common to all Class members predominate over any questions affecting individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this action.

## COUNT I
### [Violation of the Terms of the Plan Pursuant to ERISA § 502(a)(1)(B) Against Westlake and the Plan]

71.     Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

72.     ERISA § 501(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorities a participant or beneficiary of a plan to bring a civil action to recover benefits due under the terms of the plan, to enforce his/her rights under the terms of the plan, and to clarify his/her rights to future benefits under the plan.

73.     Pursuant to the Plan terms, the benefits of Plaintiff and the Class should have been calculated based on the December 31, 2020, valuation of her Westlake shares held by the Plan and should have included any and all dividends made to the Plan prior to the distribution during the second quarter of 2021.

74.     Defendants' application of the ineffective 2019 Plan to authorize the special valuation,  use of the March 31, 2020, special valuation, and application of the amended ESOP Plan Rule to mandate the segregation of company stock in June 2020 violated the terms of the Plan and resulted in an illegal cutback of Plaintiff's accrued and vested benefits under ERISA Section 204(g).

75.     Alternatively, Defendants' interpretation of the 2013 Plan to authorize to authorize a  special valuation,  use of the March 31, 2020, special valuation to determine the value of the Terminated Employee Participants account values, and amendment to

18

ESOP Plan Rule to mandate the segregation of company stock in June 2020 constituted an abuse of discretion and resulted in an illegal cutback of Plaintiff's accrued and vested benefits under ERISA Section 204(g).

76.    As a direct and proximate result of Defendants' violations of the terms of the Plan, Plaintiff and the Class have been harmed and have been deprived of benefits due under the Plan.

77.    Plaintiff and the Class are entitled to an order and judgment declaring that Defendants violated the terms of the Plan and ERISA and/or abused their discretion in administering the Plan, requiring Defendants to calculate the benefits of Plaintiff and the Class using the December 31, 2020 valuation of the shares of Westlake stock, distribute any dividends that should have been distributed to Plaintiff and the Class, and pay Plaintiff and the Class all benefits due together with prejudgment and post-judgment interest, attorney fees, and costs.

78.    Accordingly, Plaintiff asserts this claim for herself and on behalf of the Class to enforce rights under the terms of the Plan and to recover those benefits due to them under the terms of the Plan.

## COUNT II

### [Violation of the Anti-Cutback Provision of ERISA Sections 204(g) Against Defendant Westlake]

79.    Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

80.    Section 204 (g) of ERISA, 29 29 U.S.C. 1054(g), provides that "[t]he accrued benefit of a participant may not be decreased by an amendment of the plan." Under 26 C.F.R. Section 1.411(d)-3(a)(1), "a plan amendment includes any changes to the terms of the plan."

81.    An accrued benefit includes not only the "net effect" of the dollars earned and/or paid under the Plan, but also the features and elements of the benefit formula itself.

As such, the accrued benefits protected from elimination by amendment under ERISA Section 204(g) includes the conditions on which the benefits are to be paid under the Plan.

82.   Accrued benefits are considered decreased for purposes of ERISA Section 204(g) not only when they are reduced in size or eliminated entirely, but also when the plan imposes new conditions or materially greater restrictions on their receipt.

83.   Under the terms of the 2013 Plan and ESOP Rule, a Terminated Employee Participant was entitled to continue to hold Westlake stock in his or her individual ESOP account until the second quarter of the year subsequent to the year of termination.

84.   The rights of Terminated Employee Participants alleged herein are accrued benefits.

85.   By divesting Plaintiff and the Class and thereby eliminating the right of Plaintiff and the Class to continue to hold Westlake stock in their individual ESOP accounts, and the forced sale of Westlake stock in June 2020, the 2019 Plan and amendment to the ESOP Rule mandating liquidation of the Terminated Employee Participants in the second quarter of 2020, instead of the second quarter of 2021, decreased and eliminated accrued benefits of Plaintiff and the Class.

86.   As a result, the amended 2019 Plan and ESOP Rule constituted a prohibited cut back of benefits in violation of ERISA Section 204(g) as to Plaintiff and the Class.

87.   As such, Plaintiff and the Class are entitled to benefits for which they are eligible in conformity with the provisions of the ESOP Plan document as if the 2019 Plan and the amended ESOP Rule had not been implemented, as well as the payment of any benefits, lost investment earnings, dividends, interest, and distribution charges that may be owing.

88.   Plaintiff and the Class are also entitled to declaratory, injunctive, and other equitable relief, including but not limited to an order 1) declaring that Defendants violated ERISA Section 204 and applicable regulations and that Defendants' unlawful amendments never became effective; 2) enjoining Defendants from failing to pay Plaintiff and the Class

CLASS ACTION COMPLAINT

their vested accrued benefits based on the valuation of the Westlake shares as of December 31, 2020; 3) requiring Defendants to pay all benefits to Plaintiff and the Class and the lost earnings on those benefits; 4) disgorging any unjust enrichment received by Defendants, and reforming the Plan as necessary and appropriate together with pre-judgment an post judgment interest, attorney fees, and costs.

## COUNT III
**[Breach of Fiduciary Duty Under ERISA Sections 404(a)(1)(A)&(B) For Misrepresentations and Violations of ERISA's Disclosure and Written Plan Requirements Against All Fiduciary Defendants]**

89.    Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

90.    ERISA Section 402, 29 U.S.C. 1102, requires every employee benefit plan to be in writing and specify the basis on which payments are made to or from the plan.

91.    A plan's fiduciary duties of loyalty and prudence include a duty to disclose and to inform.  These duties not only require that a fiduciary comply with the disclosure provisions in Title I of ERISA, but also entail: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence may be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

92.    Defendants breached these duties as follows with regard to statements or omissions as follows:

a) Defendants misled Terminated Employee Participants by promising in plan documents and other communications that Terminated Employee Participants would have their benefits paid in the same manner and form as retirement benefits as described in the ESOP Rule.

b)   Defendants misled Terminated Employee Participants by promising in plan documents and other communications that they would not divest Plan participants

of any entitlement to benefits, including their right to continue to hold Westlake stock until the second quarter of 2021;

c)  Defendants misrepresented that the special valuation was authorized by the Plan and that it was necessary to perform the special valuation in April 2020 and then liquidate the shares of only Terminated Employee Participants; and

d) Defendants failed to disclose that the one of the primary motives of the special valuation and the amended 2019 Plan was to reduce the benefits only of the Terminated Employee Participants and limit the repurchase of obligations of the Plan and/or Westlake.

93.     By the acts and omissions complained of above, Defendants violated ERISA disclosure and written plan document obligations.  Plaintiff and members of the Class were harmed by Defendants failing to honor their promises and representations that former employees would remain in the Plan and invested in Westlake stock until the second quarter of 2021.

94.     As a proximate result of Defendants' violations of ERISA, Plaintiff and the Class have  been harmed and, *inter alia*,: have been deprived of material disclosures required to be made by Plan fiduciaries that deprived Plaintiff and the Class of the ability to make timely, informed decisions regarding  retirement benefits, continued employment, savings, and decisions regarding whether and when to terminate their employment; Plaintiff and the Class have  suffered losses including the loss of benefits and lost opportunities, and Defendants have been unjustly enriched.

95.     Plaintiff and the Class are  entitled to declaratory, injunctive, and other equitable relief and remedial relief pursuant to ERISA § 409(a), including but not limited to, an order declaring that Defendants violated ERISA's disclosure obligations and applicable regulations, and ordering Defendants to pay all benefits wrongfully withheld, together with all other appropriate equitable and make-whole relief including surcharge of

the Plan fiduciaries, disgorgement of any unjust enrichment received by Defendants together with prejudgment and post judgment interest, attorney fees, and costs.

## COUNT IV

### [Breach of Fiduciary Duty Under ERISA Section 404(a)(1)(A), (B), &(D) Regarding Sale of Westlake Stock in the Forced Sale Against All Fiduciary Defendants]

96.     Plaintiff restates and re-alleges the foregoing paragraphs as if fully alleged herein.

97.     Defendants are fiduciaries to the Plan under ERISA § 3(21)(A), 29 U.S.C. 1002(21)(A), based on the discretionary authority and responsibilities they assumed and/or were granted for administering the Plan.

98.     Defendants have a fiduciary responsibility to provide Plaintiff with adequate disclosures of any changes in the benefit plans and to administer the Plan in accordance with the documents and instruments governing the Plan and in accordance with ERISA.

99.     Defendants have a fiduciary duty to discharge their duties solely in the interest of the participants and beneficiaries, for the exclusive purpose  of providing benefits to participants and beneficiaries; to make reasonable and adequate disclosures to Plan participants of the material terms and requirements in order to receive benefits under the Plan and the circumstances that could result in denial, loss, or forfeiture of eligibility for Plan benefits; and to comply with the terms of the Plan and other documents and instruments governing the Plan insofar as they are consistent with ERISA.

100.   The duties of loyalty under ERISA Section 404(a)(1)(A) and prudence under ERISA Section 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the participant receives adequate consideration for the assets in his or her account in the Plan.  Pursuant to ERISA Section 3(18), adequate consideration for an asset for which there is no generally recognized market, means the fair market value of the asset determined in god faith by the trustee or name fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor Regulations.

CLASS ACTION COMPLAINT

101.    Even if the March 31, 2020 special valuation were authorized by the Plan and not stale under the Code or the terms of the Plan, the valuation that they obtained and on which they relied did not constitute adequate consideration or fair market value at the time of the forced sale.

102.    In the event that the Defendants did not know or were not aware of facts regarding the inadequate valuation, they were required to undertake an appropriate investigation to make the determination concerning the adequacy of the consideration to fulfill their fiduciary duties.  An appropriate investigation would have revealed that the special valuation used for the forced sale that only applied to the Terminated Employee Participants did not reflect the fair value of Westlake stock.

103.    By committing and/or allowing the above conduct, Defendants

breached their ERISA fiduciary duties to Plaintiffs:

- failing to calculate and pay benefits and otherwise administer the Plan in accordance with the Plan terms and promises made to and on behalf of Plan participants;
- administering the Plan in a non-uniform and arbitrary manner;
- failing to provide Plaintiff and the Class the disclosure of material information;
- misrepresenting benefit entitlements of Plaintiff and the Class;
- engaging in self-dealing and conflicted decision-making;
- failing to take steps to remedy breaches of fiduciary duty.

104.    As a  result of causing or permitting the forced sale of the Terminated Employees' Westlake stock at the March 31, 2020 price, Defendants breached their fiduciary duties and caused losses to the Class Members' accounts and to the Plan.

## **COUNT V**

**[Engaging in a Prohibited Transaction Forbidden by ERISA Sections 406a)-(b)
against the Trustee Defendant and Westlake]**

24

105.    Plaintiff restates and re-alleges the foregoing paragraphs as if fully alleged herein.

106.    ERISA Section 406(a) requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange…between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

107.    ERISA Section 406(b) mandates that a plan fiduciary shall not "in his individual or in any other capacity act in any transaction involving the plan on behalf of a party or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or deal with the assets of the plan in his own interest or for his own account," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

108.    ERISA Section 408(e) provides a conditional exemption from the prohibited transaction rules in ERISA Section 406(a) for the sale of employer securities to or from a plan if the sale is made for adequate consideration.  ERISA Section 3(18)(B) defines adequate consideration as the "fair market  value of the asset as determined in good faith by the trustee or named fiduciary."

109.    Defendants engaged in a prohibited transaction in violation of ERISA Sections 406(a) and (b) in the June forced sale, and the prohibited transaction did not meet the conditional exemption requirements of ERISA Section 4089e).  Defendants failed to ensure that Westlake paid no less than fair market value for the Westlake stock purchased by Westlake from Plaintiff and the Class in June 2020.  Specifically, Westlake paid less than fair market value for shares purchased in the June 2020 force sale transaction.

110.    As a result of causing or participating in a prohibited transaction, the Defendants caused losses to Plaintiff and the Class Members' accounts and to the Plan, have profited from the prohibited transactions.

## COUNT VI

**[Invalidation of the 2019 Plan and Enforcement of the Terms of the Plan Pursuant to ERISA Section 502(a)(3) Against All Defendants]**

111.    Plaintiff restates and realleges the foregoing paragraphs as though fully alleged herein.

112.    ERISA Section 502(a)(3) authorizes a plan participant to bring a civil action to (A) enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

113.    Relief is unavailable under ERISA Section 502(a)(1)(B) or the remedy under ERISA Section 502(a)(1)(B) because the terms of the Plan now include the terms of the 2019 Plan. Therefore, a claim challenging the validity of the 2019 Plan is properly brought under ERISA Section 502(a)(3).

114.    As a matter of both federal common law and the common law of contract, which to ERISA plans, the terms of the Plan are fixed at the time of acceptance by the employee-participant, which is completed by performance. At the latest, once an employee separates from employment, the terms of the pension plan in existence at the time of separation of employment are the terms that govern the benefits owed to and to be paid to the participant.

115.    Because the 2019 Plan was not properly amended in accordance with the requirements set forth in the 2013 Plan, the 2019 Plan never became effective. As a matter of contract law, the 2019 Plan therefore is invalid and does not apply to the Terminated Employee Participants and cannot be used to justify Defendants' actions.

116.    As a result, Plaintiff and the Class are entitled to have the 2019 Plan declared invalid as to them, to a declaration that their rights and benefits are and will be determined under the 2013 Plan in effect when they terminated retired, and, as necessary, Plaintiff and the Class are entitled to have the Plan reformed accordingly and/or to an injunction

requiring administration of the Plan in a manner consistent with the terms of the Plan in existence at the time of their retirement.

## COUNT VII

**[Violation of ERISA Section 404(a)(1)(A)&(B) Against Westlake and Individual Board Member Defendants]**

117.    Plaintiff restates and realleges the foregoing paragraphs as if fully alleged herein.

118.    Pursuant to Section 17(a) of the 2013 Plan, the Board of Directors of Westlake had the authority to appoint a Committee to administer the plan.  Pursuant to Section 17(c) of the Plan,

the Committee is required to administer the Plan in a uniform nondiscriminatory manner for the exclusive benefit of the Participants and their Beneficiaries. The Committee is required to administer the Plan in accordance with its terms and has the power and discretion to interpret the terms of the Plan and determine all questions arising in connection with the administration, interpretation, and application of the Plan, including the power to determine the amount of the Plan Benefit to which a Participant or Participant's Beneficiary is entitled. The Committee had the authority and obligation to make such rules, regulations, interpretations, discussions, and computations as may be necessary.

119.    Pursuant to this authority, Defendant Westlake and Individual Board Defendants had a duty to monitor the conduct of the Committee Defendants, and to take appropriate action if those Defendants were not adequately protecting the interests of the ESOP participants.

120.    Upon information and belief, Defendant Westlake and the Board Defendants knew, or in the exercise of reasonable diligence, should have known that the Committee Defendants had failed to conduct a reasonable investigation of the price of the Westlake stock, had failed to determine whether the forced sale was consistent with the terms of the

Plan document and representations made to the Class, had failed to honor promises and representations in disclosures made to participants in the ESOP about the ESOP Rule regarding segregation, and had made misleading statements about the effectiveness of the 2019 Plan, the authority of Defendants to call for a special valuation of the Westlake shares under the ineffective 2019 Plan, the reasons for the special liquidation, and the amendment to the ESOP Rule requiring the Terminated Participant Employees to liquidate Westlake stock in the second quarter of 2020.

121.    By failing to properly monitor and/or take appropriate action against the Committee Defendants, including the removal of the Committee Defendants, Defendant Westlake and/or the Individual Board Member Defendants breached their fiduciary duties by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (a) for the exclusive purpose of providing benefits to participants and their beneficiaries and (b) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person action in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, all in violation of ERISA Sections 404(a)(1)(A) and (B).

122.    As a result of the breaches by Defendants Westlake and the Individual Board Member Defendants, the Plan suffered a loss and/or the participants who are members of the Class correspondingly also suffered losses to their individual accounts.

## COUNT VIII

### [Violation of ERISA Section 410 and ERISA 404(a)(1)(A)&(B) Against All Defendants]

123.    Plaintiff restates and realleges the foregoing paragraphs as if fully alleged herein.

124.    ERISA Section 410(a) provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty

under this part [ERISA Part IV] shall be void as against public policy." As ERISA Section 403(a) and ERISA Section 404(a) are both under part IV of ERISA, any provision that attempts to relieve a fiduciary of liability is void pursuant to ERISA Section 410(a) unless there is an exception or exemption. No such exemption or exception is applicable here.

125.   Section 17(f) of the 2013 Plan purports to indemnify "each member of the Committee and any other fiduciary of the Plan duly appointed by the Board of Directors of the Company against any personal liability or expense except for his own gross negligence or willful misconduct."

126.   To the extent that Section 17(f) of the 2013 Plan (or any other agreement) attempts to relieve the Committee Defendants of their responsibility or liability to discharge their fiduciary duties or to have Westlake (an ESOP-owned company) and thereby the Plan to be responsible for their liability or breaches, Section 17(f) is void as against public policy.

127.   To the extent that the fiduciaries of the Plan would agree to such a provision that is void against public policy under ERISA Section 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (a) for the exclusive purpose of providing benefits to participants and their beneficiaries and (b) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person action in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, all in violation of ERISA Sections 404(a)(1)(A) and (B).

128.   As  result of the foregoing, Section 17(a) should be declared void *ab initio* and the terms of the Plan document should be reformed to strike or modify accordingly.

### ENTITLEMENT TO RELIEF

129.   By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiff and the Class, as plan participants and beneficiaries, are entitled to sue the Plan s pursuant to ERISA Section 502(a)(1)(B) for an award of benefits against the Plan and the

Plan Administrator in the amount they would have received based on the December 31, 2020 valuation of $41.95 per share and all applicable dividends declared by Westlake prior to the distribution under the ESOP Rule.

130.   By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiff and the Class, as plan participants and beneficiaries, are entitled to sue the fiduciaries pursuant to ERISA Section 502(a)(2) for relief on behalf of the Plan as provided in ERISA Section 409, including recovery for the Plan of any losses to the Plan resulting from each such breach and for such other equitable or remedial relief as the Court may deem appropriate.

131.   By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiff and the Class, as plan participants and beneficiaries, are entitled to sue the fiduciaries pursuant to ERISA Section 502(a)(3), to enjoin the ongoing breach of fiduciary duty, the ongoing violations of ERISA, and the ongoing practices identified above that violate the terms of the Plan, and to obtain other appropriate equitable relief to redress such violations and/or to enforce provisions of ERISA and the terms of the Plan.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants, and each of them, on each Claim for Relief and for the following relief:

A.   Certify this action as a class action pursuant to Fed.R. Civ. P. 23, certify the named Plaintiff as class representative and her counsel as class counsel;

B.   Declare Plaintiff and the Class are entitled to have their benefits calculated and/or paid in conformity with the terms of the Plan in effect at the time of their termination;

C.   Declare that the fiduciary Defendants, and each of them, have breached their fiduciary duties to the Class and/or knowingly participated in breaches of fiduciary duty;

CLASS ACTION COMPLAINT

D.   Enjoin Defendants, and each of them, from further violations of their fiduciary responsibilities, obligations, and duties;

E.   Order that Defendants make good to the ESOP and/or any successor trust(s) the losses resulting from their breaches and restoring any profits they have made through use of assets of the ESOP;

F.   Order that Defendants provide other appropriate equitable relief to the ESOP, Plaintiff, and the Class, including but not limited to surcharge, rescission, reformation of the Plan, providing an accounting for profits, imposing a constructive trust and / or equitable lien on any funds wrongfully held by Defendants, or any of them;

G.   Invalidate the 2019 Plan or reforming the terms of the ESOP to eliminate the applicability of the 2019 Plan as to any of the Terminated Participant Employees;

H.   Requiring Defendants to make good any losses suffered by Plaintiff and the Class from the forced sale of the Westlake stock held in their individual accounts in the ESOP in June 2020 and disgorge to Plaintiff and the Class any profits they have made from the forced sale;

I.   Remove the members of the Committee from their role as fiduciaries of the EESOP, enjoining any of the breaching fiduciaries from acting as fiduciaries for any plan that covers the employees of Westlake and appointing an Independent Fiduciary to manage the ESOP;

J.   Order the proceeds of any recovery for the Plan to be allocated to the accounts of the Class to make them whole for any injury that they suffered as a result of the breaches of fiduciary duty in accordance with the Court's declaration with respect to the terms of the Plan;

K.   Ordering pursuant to ERISA Section 206(d)(4) that any amount to be paid to or necessary to restore Plaintiff's ESOP account can be satisfied by using or

31

transferring any breaching fiduciary's ESOP account in the Plan to the extent of his or her liability;

L.    Declare that any indemnification agreement between the Defendants and the ESOP violates ERISA Section 410 and is therefore null and void;

M.    Award Plaintiff here reasonable attorney fees and costs of suit incurred herein pursuant to ERISA Section 502(g) and/or for the benefit obtained for the common fund;

N.    Order Defendants to pay prejudgment interest; And

O.    Award such other and further relief as the Court deems equitable and just.

Dated: May 15, 2023                          Respectfully submitted,

                                             **MILLER SHAH LLP**

                                             /s/ *Kolin C. Tang*
                                             Kolin Tang (SBN 279834)
                                             **MILLER SHAH, LLP**
                                             19712 MacArthur Boulevard, Suite 222
                                             Irvine, CA 92660
                                             Telephone: (415) 429-5272
                                             Facsimile: (866) 300-7367
                                             Email: kctang@millershah.com

                                             Ronald S. Kravitz (SBN 129704)
                                             **MILLER SHAH, LLP**
                                             465 Montgomery Street, Suite 1900
                                             San Francisco, CA 94104
                                             Telephone: (415) 429-5272
                                             Facsimile: (866) 300-7367
                                             Email: rskravitz@millershah.com

                                             *Counsel for Plaintiff*

CLASS ACTION COMPLAINT