Ronald S. Kravitz (SBN 129704)
**MILLER SHAH, LLP**
465 Montgomery Street, Suite 1900
San Francisco, CA 94104
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: rskravitz@millershah.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY NGUYEN, individually, and on behalf of all similarly situated participants, | Case No.:  8:23-cv-00854 |
| Plaintiff, | |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| WESTLAKE SERVICES HOLDING COMPANY; WESTLAKE SERVICES HOLDING COMPANY EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE; DON HANKEY; BRET HANKEY; IAN ANDERSON; PAUL KERWIN, EUGENE LEYDIKER, GRACIA ANG, and DOES 1 - 50. | |
| Defendants. | |

## I.    **INTRODUCTION**

1.    Plaintiff, Mary Nguyen ("Plaintiff" or "Nguyen"), by and through her attorneys, files this action against Defendants, Westlake Services Holding Company ("Westlake" or the "Company"), the Westlake Services Holding Company Employee Stock Ownership Plan ("Plan" or "ESOP"), Westlake Services Holding Company Employee Stock Ownership Plan Committee (the "Committee"), the Committee members, Don Hankey, Bret Hankey, Ian Anderson, Paul Kerwin, Eugene Leydiker, and Gracia Ang (collectively, "Individual Defendants"), and Does 1–50 (collectively, "Defendants") alleges as follows:

## II.    **NATURE OF ACTION**

2.    This is an action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1001 *et seq.*, on behalf of a Class of former employee participants (and their beneficiaries) in the Westlake Services Holding Company Employee Stock Ownership Plan.

3.    This case arises out of Defendants' failure to pay benefits under the terms of the Plan, failure to follow the terms of the Plan, and/or abuse of their discretion in the management of the Plan and the interpretation of the Plan.  As a remedy, Plaintiff seeks to require Defendants to: (i) pay the benefits owed to Plaintiff and the Class and make good to the Plan, Plaintiff, and the Class members losses resulting from Defendants' fiduciary breaches; (ii) restore to the Plan any profits that may have been made by the breaching fiduciaries and parties in interest through the use of Plan assets; and (3) obtain other appropriate equitable and legal remedies to redress violations and to enforce the provisions of Title I of ERISA.

4.    Plaintiff Mary Nguyen was formerly employed by Hankey Investment Corp., an affiliate of Westlake, the sponsor of the Plan.  The "2019 Terminated Employee Participants" are Plan participants with vested account balances whose employment was terminated in 2019, and the "2020 Terminated Employee Participants" are Plan participants

FIRST AMENDED CLASS ACTION COMPLAINT

with vested account balances whose employment was terminated during the first quarter of 2020 (collectively "Terminated Employee Participants"). The proposed Class consists of Terminated Employee Participants in the ESOP (and their beneficiaries) who, as alleged below, have been deprived of promised benefits as a result of violations of ERISA by Defendants.

5. The Plan's primary asset is its equity holdings in Westlake stock. The ESOP allocates shares of Westlake stock to the individual accounts of Plan participants. The Plan has long been an important part of the compensation package for employees of Westlake and its affiliates. Plaintiff and other members of the Class contributed to Westlake's success and were able to share in that success as the value of the Westlake stock holdings in their individual ESOP accounts grew over time.

6. Under the terms and practice of the effective written instrument of the Plan, Terminated Employee Participants were eligible to receive a distribution from the Plan within a reasonable time after their account balance had been segregated into a Segregated Post Termination Account of the year subsequent to the termination of the participant. The valuation of the Westlake stock was based on the value at the end of the year of termination.

7. In the first quarter of 2020, Plaintiff and at least 48 of the 2020 Terminated Employee Participants received a letter from Defendant Don Hankey stating that (i) they would be eligible to receive a distribution from the Plan in the second quarter of 2021; (ii) the Plan's third-party administrator would mail a distribution package shortly after the annual statements were provided; and (iii) the Plan valuation will be on an annual basis after the 2020 plan year.

8. Instead of following the Plan in effect at the time of the termination of the Terminated Employee Participants, Defendants followed the terms of an ineffective 2019 amended and restated Plan ("2019 Plan") that authorized them to request a special valuation and immediate segregation of the accounts of the 2020 Terminated Employee Participants as of March 31, 2020, depriving Plaintiff of the April 2020 and April 2021

2

FIRST AMENDED CLASS ACTION COMPLAINT

special dividends provided to Plan participants and the benefit of the increased valuation of the shares of Westlake stock from $39.70 to $41.95 per share.

9. As a result of Defendants' failure to pay benefits in accordance with the terms of the Plan and fiduciary breaches and violations of ERISA, Plaintiff and the Class did not receive the full amount of benefits to which they are entitled under the Plan.

### III. PARTIES

10. Plaintiff is a resident of Westminster, California. She began her career with Defendants in 2004 and was a participant in the Plan from 2011 through June 2020.

11. The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34). The Plan is established and maintained under a written document in accordance with 29 U.S.C. § 1102 and serves as a vehicle for retirement savings and to produce retirement income for employees of Westlake and Westlake affiliates. The Plan also is an ESOP under ERISA Section 407(d)(6) that was intended to meet the requirements of Section 4975(e) of the Internal Revenue Code ("Code") and IRS Regulations Section 54.4975-11.

12. Westlake is the named Plan Administrator of the Plan, and thus a fiduciary to the Plan under ERISA.

13. Westlake is a technology-based, privately held finance company that specializes in the acquisition and servicing of prime to subprime automotive retail installment contracts. It also offers a portfolio of acquisition services and direct consumer loans through its wholly owned subsidiary, Wilshire Consumer Credit, LLC. Headquartered in Los Angeles, California, Westlake finances contracts through a network of over 50,000 new and used car dealerships throughout the United States. Westlake currently has more than 1,200 employees, with 1,000 employees located at the Los Angeles corporate headquarters.

14. Formed in August 1988, Westlake is the financial services arm of the Hankey Group, which is based in Los Angeles and has ownership interests in a number of

3

FIRST AMENDED CLASS ACTION COMPLAINT

automotive-industry related companies. The Hankey Group also includes, among other companies, a real estate firm, a Toyota dealership, and auto insurance, rental car, and dealer software businesses. Each Hankey Group company holds a symbiotic relationship to the other. HFC Acceptance, a fleet finance and leasing company, focused on commercial financing to rental agencies that purchased vehicles from Midway Ford. Nowcom's DealerCenter provides a multi-lender and DMS platform for used car dealerships, featuring Westlake Financial Services, LLC ("Westlake Financial"), one of Westlake's wholly owned subsidiaries, as a preferred lender. Additionally, Nowcom provides IT support for all Hankey Group companies. Hankey Investment Company is a private real estate investment firm that procures real estate for Hankey Group and manages around $2.2B in assets, comprised of real properties ($1.87B) and commercial loans ($1.356B). Since 1985, Knight Insurance Company, a Cayman Islands company, together with its domestic affiliates KnightBrook Insurance Company and Knight Specialty Insurance Company, have partnered with North Hollywood Toyota, Westlake Financial, and Midway Auto Group to provide consumers with various auto-related insurance products and services. Defendant Don Hankey presides over the Hankey Group and Westlake.

15.    As of December 31, 2019, Westlake had 104,189,553 ownership units issued, with the Westlake Board of Directors and Plan fiduciaries holding significant shares: Don Hankey (8.97%); Bret Hankey (1.03%); Ian Anderson (0.78%); and Paul Kerwin (0.51%).

16.    Don Hankey is sole Trustee of the Plan ("Trustee Defendant").

17.    Upon information and belief, in or around July 2020, Westlake, through its Board of Directors, Individual Board Defendants Don Hankey, Ian Anderson, and Paul Kerwin, appointed Defendant Committee in or around July 2020.

18.    The Committee consisted of the Individual Committee Defendants: Don Hankey, Ian Anderson, Paul Kerwin, Eugene Leydiker, and Gracia Ang. The appointment and delegation of responsibility conferred Westlake's fiduciary obligations on to the Individual Defendants with respect to their review of the Plaintiff's benefits claim.

4
FIRST AMENDED CLASS ACTION COMPLAINT

19. Plaintiff presently does not know the names or capacities of other defendants for the wrongdoings described in this Complaint and sues such defendants under the fictitious names Does 1 through 50, inclusive.

### III. JURISDICTION AND VENUE

20. This Court has jurisdiction pursuant to ERISA Sections 502(e) and (f), 29 U.S.C. § 1132(e) and (f) and 29 U.S.C. § 1131.

21. Venue is proper in this District pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391 because the Plan is administered in this District, the breach or violation took place in this District, and one or more Defendants reside in this District.

### IV. FACTUAL ALLEGATIONS

**A. Background**

22. Westlake established the Plan on or about January 1, 2001.

23. The Plan is an employee stock ownership plan with a Code section 401(k) element covering all Hankey Group employees, except for collective bargaining employees. The Hankey Group consists of Westlake Services Holding Company, Westlake Services, LLC, and its affiliates: TNH Motors, Inc., Midway Rent-A-Car, Inc., Nowcom, LLC, Hankey Investment Company, LP, HFC Acceptance, LLC, Knight Management Services, LLC, Western Funding, Inc., Westlake Portfolio Services, Inc., CU Leasing Corp., and Conrad Staffing Services, LLC (collectively, "Companies"). The Plan is designed to comply with Section 4975(e)(7) and the regulations thereunder of the Internal Revenue Code of 1986, as amended, and is subject to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Hankey Group also sponsors the HG 401(k) Plan, a defined contribution plan. The Plan is administered by an administrative committee.

24. The Plan is a defined contribution plan under which a separate individual account is established for each participant. Each participant's account is credited as of the

FIRST AMENDED CLASS ACTION COMPLAINT

last day of each Plan year with an allocation of each participant's individual contributions, employer discretionary matching contributions, and Plan earnings and expenses.  Only those participants who are employees of the Companies as of the last day of the Plan year are eligible to receive an allocation of Company matching contributions.  Plan earnings are allocated to each participant's account in proportion to the balances of all participants' accounts.

25.  In 2011, Westlake Services Holding Company was created to acquire common shares of Westlake Financial.  The exchange of Westlake Financial shares for Company common shares was done on a one-for-one basis.

26.  Upon information and belief, in 2013, Westlake amended and restated the Plan ("2013 Plan").

27.  The 2013 Plan did not expressly authorize Defendants to perform a special valuation of Westlake stock or mandate the segregation of participants accounts during the year in which they terminated their employment.

28.  Section 6(j) of the 2013 Plan provided the segregation rules for terminated Plan participants:

> Each Participant who terminates service with the Employer and elects to keep some or all of his Accounts in the Plan after his termination of employment rather than take an immediate distribution of such account shall have the vested balance of his Accounts placed in a Segregated Post Termination Account... Segregation shall occur within a reasonable time following the determination that a Segregated Post Termination Account is to be established.

29.  Pursuant to Section 6(k) of the Plan, the Company was required to establish a procedure for the allocation of shares of Company Stock purchased by the Plan whether from third parties to the Plan or from other Participant Accounts within the Plan in the discretion of the Committee.  Section 6(k) further required that the allocation method must

6

FIRST AMENDED CLASS ACTION COMPLAINT

not discriminate in favor of highly compensated employees such as the Individual Defendants.

30.    Pursuant to Section 11 of the 2013 Plan, **"[w]hen** a Participant becomes entitled to a distribution of all, a part or none of the vested portion of his Company Stock Accounts (Elective, Non-Elective and Matching) **and** Other Investments Accounts (Elective, Non-Elective and Matching) or Rollover Accounts in accordance with the provisions of the Plan, the valuation of such Accounts will be based on the value as of the last Anniversary Date immediately preceding such distribution, or, if applicable, as of the most recent interim valuation, if any, following the Anniversary Date." (Emphasis added.) Under Section 2 of the 2013 Plan, "Anniversary Date" is defined as December 31st of each year.

31.    The reference to "interim valuation" in Section 11 of the 2013 Plan pertains to any valuation of the Company Stock Accounts (Elective, Non-Elective and Matching), Other Investment Accounts, or Rollover Accounts *in accordance with provisions of the Plan* between the Anniversary Date and the distribution of the benefits under the Plan. It does not authorize a "special valuation" of the Company Stock, and "interim valuation" is not synonymous with "special valuation." Interim valuations consider any dividends, matching contributions, and other income that may have been applied to the accounts of participants subsequent to the Anniversary Date should there be changes in the value of those accounts after the Anniversary Date.

32.    At all relevant times, under the 2013 Plan, Defendants determined that the "reasonable time" to establish a Segregated Post Termination Account and to segregate Company Stock was the second quarter of the year subsequent to the termination of the participant. At no time prior to the termination of Plaintiff and the members of the class did Defendants exercise their discretion to modify or accelerate the reasonable time to establish a Post Termination Account and/or to segregate company stock in the same year as the termination of the participant.

7

FIRST AMENDED CLASS ACTION COMPLAINT

33.    Upon information and belief, under the 2013 Plan and established segregation rules, a Participant did not become eligible to receive a distribution of any portion of the vested portion of her Company Stock Accounts until the second quarter of the year following the termination of employment, when the Plan set up a Segregated Post Termination Account.  The Plan never segregated or distributed the account balances of the participants in the same year of the termination of employment of the participant.

34.    To amend the 2013 Plan, Section 19(c) required the Board to prepare a written resolution of the Board.  Upon information and belief, at no time did the Board prepare a written resolution to amend the 2013 Plan prior to the termination of Plaintiff and the 2013 Plan was in effect at the time of the termination of Plaintiff and the Class.

35.    On or about January 16, 2020, Plaintiff provided her notice of resignation to Hankey, indicating that the effective date of the resignation would be February 3, 2020.

36.    In response to her notice of resignation, Defendants provided her with a form entitled Benefit Information Post Termination ("Benefit Information") that represented that Plaintiff would not receive her rollover package until the 2021.  The Benefit Information informed Plaintiff of when she would become eligible to receive a distribution from the Plan and the basis on which her benefits would be calculated:

> **Termed participants will not receive a distribution/rollover package until after the plan year when the employment termination occurs**. Participants terminating will receive the option for distribution/rollover after the current plan year ends, sometime in the 2nd quarter of the following year. The 3rd party administrator will prepare the distribution/rollover package to be mailed shortly after the annual statements. …
>
> **The Westlake ESOP Plan Rule set forth is that termed participants are eligible to receive their distribution after the plan year that employment termination occurred has ended.** (Emphasis added) E.g. participants termed in year (2016), qualify to receive their distribution after plan year 2016 ends. A distribution package

8

is sent to terminated employees, the following year in the 2nd quarter of year (2017). Distribution packages are mailed to former participants after the annual valuation is complete and statements are generated. The former employee needs to inform their former employer with their new address.

**The ESOP Plan valuation is on an annual basis after the current plan year ends.**

37.   On or about January 21, 2020, the Company received its valuation report for the Plan, concluding the fair market share value of Westlake stock was $39.70 ("2019 Fiscal Year Valuation").

38.   The Plan then issued Plaintiff a Participation Statement for the year ending December 31, 2019 (the "2019 Statement") based on the 2019 Fiscal Year Valuation, stating Plaintiff had an accrued vested Plan Benefit of $241,053.91.

39.   On February 3, 2020, Plaintiff resigned from Hankey Investment Company.

40.   Based on the 2013 Plan and the representations by Defendant Hankey at the time of Plaintiff's resignation, she would be eligible to receive her distribution in the second quarter of 2021 and calculated using the December 31, 2020 valuation of the Westlake shares.

41.   Upon information and belief, on or about March 3, 2020, Westlake issued a special dividend of $3.28 per share to the Plan, which was applied to 71,571,329 shares. Defendants used approximately one half of the dividend to buy additional shares of Westlake stock at $39.70 per share.  Defendants did not provide notice to Plaintiff and the Class of the dividend or the distribution of the dividend on March 3, 2020.

42.   In March 2020, the spread of COVID 19 impacted the economy.  The Individual Defendants, which include Don Hankey and other Westlake officers, took advantage of the chaos and abrupt downturn of the stock market to call for a special valuation of the Westlake stock believing that it would result in approximately a 30% reduction in the value of the shares of the Terminated Employee Participants and a corresponding reduction in the repurchase obligations of Westlake and/or the Plan.  In

9

FIRST AMENDED CLASS ACTION COMPLAINT

doing so, Defendants cut the accrued and vested benefits of Plaintiff and the Class by almost 30%. By cutting the benefits, the Individual Defendants, who also held significant numbers of Westlake shares through the Plan, benefited from the reduced repurchase obligations of Westlake.

43. Upon information and belief, in or around December 2019, Defendants learned of the termination of a participant in the Plan with a significant account balance. Under the 2013 Plan, the participant would be eligible for the distribution of his benefits in the second quarter of 2020. On or about March 27, 2020, Defendants learned of the termination of another participant with a significant account balance as well as other participants who had terminated in the first quarter of 2020, creating a financial problem for the Plan because it did not have sufficient cash for the repurchase obligations.

44. Upon information and belief, in 2020, Westlake prepared a draft of the 2019 Plan. At all relevant times, Defendants concealed the existence of the draft 2019 Plan from Terminated Employee Participants and failed to disclose the intent to amend the 2013 Plan. Had Plaintiff known of the intent to amend the Plan, she would not have resigned during the first quarter of 2020.

**B.    March 31, 2020 Special Valuation**

45. Upon information and belief, on March 30, 2020, without any investigation or process, Individual Defendants decided that the value of the Westlake stock had substantially decreased by as much as 30% since the valuation report for the year-ending December 31, 2019, which it had received two months earlier on January 21, 2020.

46. On or about April 1, 2020, Westlake engaged KPMG, the auditors for Westlake and the Plan, to perform a special valuation of the Westlake stock.

47. Upon information and belief, on or about April 2, 2020, Westlake issued a dividend of $3.52 per share to the 76,525,947 shares. Plaintiff and the Class did not receive any of the April 2, 2020 dividends despite the fact that they were shareholders of record as of that date.

FIRST AMENDED CLASS ACTION COMPLAINT

48.    Upon information and belief, on April 22, 2020, as forecasted by Don Hankey on April 4, 2020, KPMG provided the Board with its Special Valuation report ("Special Valuation"), reflecting approximately a 30% drop in the fair market value of the ESOP shares from $39.70 to $28.10 per share.  The justification for the reduced value was based, in part, on Company financial projections provided by some of the Individual Defendants to KPMG.

**C.    Disclosure of Special Valuation and Amended Segregation Rule**

49.    By letter dated on or about May 21, 2020, Defendants disclosed to Plaintiff and the class, for the first time, that their Plan statements had been updated to reflect the new stock value with earnings/losses adjustments based on an ESOP value dated March 31, 2020 and that former employees waiting to receive their distributions could expect their distribution calculations to be based on vested balances as of March 31, 2020 ("May 21 letter").

50.    By letter dated May 26, 2020, Defendants informed Plaintiff that she was entitled to receive a lump-sum payment of $190,191.02 based on a share price for the Westlake stock of $28.10 ("May 26 letter").  The letter did not disclose the existence of the 2019 Plan, the March 3 or April 2, 2020 dividends, or that the Plan had segregated her account as of March 31, 2020.

51.    The May 26 letter further notified Plaintiff, for the first time, that Defendants would establish a Post Termination Segregation Account in 2020 and that she had to make a distribution election between a lump-sum distribution from the ESOP, or a rollover to an IRA or another qualified employer plan, and that if she did not make a distribution election, then the ESOP would transfer the proceeds from the Westlake stock to a portfolio of investment that did not include Westlake stock:

Since your benefit listed above is greater than $5,000, **you must also consent to receive a distribution. If we don't receive the Election form within the prescribed period of time, your vested account balance will remain in the Plan.**

11

**However, it will be invested in a balanced portfolio of investments that does not include Company stock.** Your vested account balance will be paid to you upon attainment of age 65 or at such earlier time as you may properly make a written request for distribution.

(Emphasis added.)

52.     At the time Defendants segregated the accounts of Plaintiff and the other Class Members, Defendants knew or should have known that recent developments had made the Westlake stock an excellent investment as the value of the stock was steadily increasing. The Special Valuation and immediate segregation requiring the repurchase of Westlake stock at the March 31, 2020 Special Valuation price deprived Plaintiff and the Class Members of the market recovery that commenced soon after the Plan received the Special Valuation as of March 31, 2020, and any dividends that would have been distributed to Plaintiff and the Class in April 2020 and, for the 2020 Terminated Employee Participants, the April 2021 dividend and appreciation of the Westlake stock based on the December 31, 2020 valuation of $41.95 per share.

53.     The change in the segregation rules were designed to discriminate and did discriminate against the 2020 Terminated Employee Participants, depriving them of the benefit of the market recovery that commenced soon after Defendants approved the Special Valuation, plus any dividends that may have issued in the first quarter of 2021.

54.     On or about June 5, 2020, Westlake adopted the amended and restated 2020 Plan, effective January 1, 2020 ("2020 Plan").  The 2020 Plan contained the same special valuation and segregations provisions found in the ineffective 2019 Plan.  The 2020 Plan was not provided to Plaintiff and the Class and did not apply to Plaintiff and the Class as their employment was terminated at the time the 2020 Plan was adopted in or around June 5, 2020.

FIRST AMENDED CLASS ACTION COMPLAINT

55.    Upon information and belief, without any disclosure to Plaintiff and the Class, Defendants segregated the Westlake stock of Plaintiff and the Class and applied a retroactive effective date of March 31, 2020.

56.    In June 2020, pursuant to the May 26 letter, the Plan distributed to Plaintiff $190,191.02.  Prior to the June distribution, Defendants knew or should have known that the March 31, 2020 share price was less than fair market value as of the date of segregation and the date of distribution.

57.    Upon information and belief, from April 1 through the date of the repurchases and distributions, Defendants failed to consider or evaluate the stock market rebound, improved financial condition of Westlake, and generally improved market conditions and its impact on the value of Westlake shares from March through June 2020.  Nor did Defendants consider or conduct a special valuation in light of the rapid and extraordinary market recovery and continued success of Westlake despite the COVID-19 pandemic.

58.    On or about September 30, 2020, the Plan filed its annual Form 5500 executed by Defendant Gracia Ang as Plan Administrator.  Attached to the Form 5500 was the Annual Report prepared by KPMG for the years ended December 31, 2019, and 2018.  Notably the Annual Report did not reference the amended and restated 2019 Plan or any changes to the segregation rules of the Plan.

59.    The stock market recovered quickly after the completion of the Special Valuation.  From December 31, 2019, through June 30, 2020, of the S&P 500, the Dow Jones Industrial Average and the comparable publicly traded companies used in the December 31, 2019, valuation report almost immediately started to recover and continued to improve through the year.  By November 24, 2020, the Dow Jones Industrial Average closed above 30,000 for the first time in its history.  By December 31, 2020, the Westlake share price had increased 49% to $41.95 a share.

13

FIRST AMENDED CLASS ACTION COMPLAINT

60. Upon information and belief, in April 2021, Westlake declared a special dividend to the Plan believed to be over $8 per share. Plaintiff and the Class did not receive any portion of the April 2021 dividend.

61. On or about April 20, 2021, in response to Plaintiff's inquiry regarding whether the Plan allowed for a special valuation and the segregation of Westlake stock in 2020, Defendant Leydiker represented in an email to Plaintiff that the Plan was amended effective January 1, 2019 to allow participants terminating in the first quarter of 2020 to be segregated and distributed at the same time, citing and attaching Section 7.11(a) of the 2019 Plan.

62. Upon information and belief, sometime in 2020, Westlake prepared a draft 2019 amended and restated Plan. At all relevant times, Defendants concealed the existence of the draft 2019 Plan from Terminated Employee Participants and failed to disclose the intent to amend the 2013 Plan. Had Plaintiff known of the intent to amend the Plan, she would not have resigned during the first quarter of 2020.

63. The draft 2019 Plan included, for the first time, a provision to authorize the Plan Administrator, at its sole discretion, to conduct a special valuation under "extraordinary circumstances":

> **2.82** "Valuation Date" except as provided in Section 7.11 with respect to Segregation of Accounts, means the last day of the Plan Year. Valuations of Company Stock shall be made pursuant to Section 9.10. Notwithstanding anything herein to the contrary and in the event that a Participant is to receive a distribution from the Plan, the Plan Administrator may in its sole discretion declare a special Valuation in extraordinary situations to protect the interests of Participants in the Plan or the Participant receiving the distribution. Such extraordinary circumstances include a significant change in economic conditions or market value of the Trust Fund.

14

FIRST AMENDED CLASS ACTION COMPLAINT

64.    The draft of the 2019 Plan also included an amended segregation  provision that discriminated against those participants who terminated their employment in the first quarter of 2020 by requiring mandatory segregation in 2020 of the accounts of Participants who terminated their employment in the last three quarters of 2019 and the first quarter of 2020, specifically referencing that prior to the 2020 Plan year account segregation occurred in the Plan Year following termination:

> **Section 7.11 SEGREGATION OF ACCOUNTS** Effective January 1, 2020, the accounts of Participants who terminate employment in the first quarter of a Plan Year shall be segregated along with the accounts of those who terminated in the last three quarters of the prior Plan Year. Prior to the 2020 Plan Year account segregation occurred in the Plan Year following termination of employment.

65.    On or about September 29, 2021, Westlake filed its Form 5500 for the Plan year 2020.  The auditor's Annual Report attached to the Form 5500 noted that the Plan was amended and restated effective January 1, 2020.  Notably, there was no reference to the 2013 Plan and the exercise of discretion under the 2013 Plan to conduct a special valuation and/or immediate segregation of Westlake stock in 2020 for the participants whose employment was terminated in 2020.  Nor was there any reference to the ineffective 2019 Plan.

66.    On or about October 5, 2022, Westlake filed its 2021 Form 5500.  Attached to the Form 5500 is the Auditor's Report for the year ended December 31, 2020.  Note 10 of the Auditor's Report states that in July 2022, the Company and the Plan settled a dispute by a former participant as a result of the special valuation, noting that the dispute was "in regards to the termination benefits provided to the participant, which were adversely affected by the March 31, 2020 valuation.  The settlement liability of the Plan amounting to $2,516,281 has been record as a liability on the statement of changes in net assets available for benefits."

15

FIRST AMENDED CLASS ACTION COMPLAINT

67.    At all relevant times, Individual Defendants operated under a conflict of interest in valuing Westlake stock held by Plaintiff and other Class Members in the June 2020 immediate segregation because, upon information and belief, they had significant investments in Westlake stock both inside and outside of the ESOP, and a lower purchase price for the Westlake stock held by Plaintiff and the Class benefited the value of their own shares.    Notwithstanding these conflicts of interest, Defendants did not retain an independent fiduciary or obtain additional valuations to ensure that the Plan paid a fair market price to repurchase the shares.

68.    Plaintiff and other Class Members received less than the fair market value for their Westlake stock segregated in 2020.

69.    As a result of Defendants' failure to follow the 2013 Plan and to instead administer the Plan under the ineffective 2019 Plan, Plaintiff and the Class were deprived of their benefits.    Additionally, Defendants have been unjustly enriched by receipt of the benefits that should have been paid to Plaintiff and the Class Members.    Defendants should be disgorged of the profits they have received as a result of their fiduciary breaches.

**D.    The Denial of Plaintiff's Administrative Claim and Appeal**

70.    Under Section 17(d) of the 2013 Plan, participants may make an application for benefits and may appeal a denial of benefits.    However, the Plan does require participants to exhaust administrative remedies prior to filing a lawsuit.

71.    On or about August 2, 2022, Plaintiff submitted her administrative claim for benefits seeking her vested and accrued benefits based on the 2020 Fiscal Year Valuation ("Benefits Claim"), challenging the use of the Special Valuation and improper amendment to the Westlake ESOP Plan Rule on which Defendants relied to reduce her benefits after she resigned from Westlake.

72.    On or about October 27, 2022, the Committee denied Plaintiff's Claim based on the ineffective 2019 Plan.

16

73.     In denying the claim, the Committee failed to acknowledge the improper and ineffective plan amendments on which they relied to deny the claim, the discrimination against only those participants who terminated their employment in the first quarter of 2020, or the improper efforts to reduce their repurchase obligations caused by the terminations of participants with shares valued in excess of over $80 million in one year.

74.     On or about December 14, 2022, Plaintiff appealed the denial of her benefits claims, asserting the Committee violated the terms of the Plan, breached their fiduciary duties, and abused their discretion in denying her claims.

75.     On or about February 10, 2023, the Committee arbitrarily denied the appeal, primarily based on the terms of the ineffective 2019 Plan, the improper Special Valuation, and the arbitrary change to the segregation rules designed to discriminate against the Participants whose employment was terminated in the first quarter of 2020.

## V.  ERISA'S FIDUCIARY STANDARDS

76.     ERISA Section 404(a)(1) 29 U.S.C. § 1104(a)(1) provides, in relevant part, that:

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan.

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and Subchapter III.

17

FIRST AMENDED CLASS ACTION COMPLAINT

## VII.  CLASS ALLEGATIONS

77.    This action is brought as a class action by Ms. Nguyen on behalf of herself and on behalf of the Class, defined as follows:

All Terminated Employee Participants with account balances greater than $5,000 and the beneficiaries of such participants ("Class"). …

Excluded from the Class are the Defendant Trustees and members of the Defendant Committee and their families; the officers and directors of Defendant Westlake and their immediate families, and legal representatives, successors, heirs, and assigns of any such excluded persons.

78.    This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

79.    <u>Numerosity</u>.  Plaintiff is informed and believes that there are more than 100 former Plan participants who would be members of the Class.  Although the exact number and identities of Class Members are unknown to Plaintiff at this time, this information is easily ascertainable from the Plan through discovery of its records.

80.    <u>Commonality</u>.  There are numerous questions of fact and/or law that are common to Plaintiff and Class members, including, but not limited to the following:

- Whether Defendants breached a fiduciary duty to the Class by failing to administer the Plan in a uniform nondiscriminatory manner for the exclusive benefit of the Participants and their Beneficiaries.

-  Whether Defendants breached a fiduciary duty to the Class by administering the Plan under the ineffective  2019 Plan;

- Whether Defendants breached a fiduciary duty to the Class by performing a special valuation as of March 31, 2020;

- Whether Defendants breached a fiduciary duty to the Class by using a stale and unreliable valuation of Westlake stock for the segregation of Westlake stock;

18

- Whether the Class received less than fair market value for their Westlake shares;

- Whether Defendants engaged in a prohibited transaction in connection with the segregation of Westlake stock;

- Whether Defendants violated ERISA's anti-cutback provision, ERISA Section 402(g), by eliminating the benefit entitlements of Terminated Employee Participants;

- Whether Defendants breached a fiduciary duty to the Class by determining the benefits of the Class based on a stale and outdated valuation;

- Whether Defendants breached a fiduciary duty to the Class by failing to follow the 2013 Plan and its segregation rules and policies that required 2020 Terminated Employee Participants to become eligible for their distributions in the second quarter of 2021, the year after the plan year of termination and based on the December 21, 2020 valuation;

- Whether Defendants abused their discretion by arbitrarily calling for a Special Valuation and/or immediate segregation of Westlake stock;

- Whether Defendants failed to pay Plaintiff and the Class their benefits under the terms of the Plan, including all applicable special dividends;

- Whether Defendants were unjustly enriched by the receipt of benefits and dividends that should have been paid to the Plaintiff and the Class;

- The appropriate form of relief that should be afforded to Plaintiff and the Class.

81. <u>Typicality</u>.  Plaintiff, a member of the Class, has claims that are typical of all the members of the Class.  Plaintiff's claims and all the claims of the members of the Class arise out of the same uniform course of conduct by Defendants and arise under the same legal theories that are applicable to all other members of the Class.

19

82. <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiff has no conflicts of interest with or interests that are any different from the other members of the Class. Plaintiff has retained competent counsel experienced in class action and other complex litigation, including class actions under ERISA.

83. <u>Predominance</u>. Common questions of law and fact predominate over questions affecting only individual members of the Class, and the Court, as well as the parties, will spend the vast majority of their time working to resolve these common issues. Indeed, the only individual issues of significance will be the exact amount of damages recovered by each Class member, the calculation of which will ultimately be a ministerial function and which does not bar certification.

84. <u>Superiority</u>. A class action is superior to all other feasible alternatives for the resolution of this matter. The vast majority, if not all, of the members of the Class are unaware of Defendants' breaches of fiduciary duty such that they will never bring suit individually. Furthermore, even if they were aware of the claims they have against Defendants, the claims of virtually all members of the Class would be too small to economically justify individual litigation. Finally, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

85. <u>Manageability</u>. This case is well suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a Class-wide basis, while the allocation and distribution of damages to members of the Class would be essentially a ministerial function.

86. Defendants have acted on grounds generally applicable to the Class by uniformly subjecting Class members to their policy of refusing to apply their deferral

20

elections to their reported tips.  Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

87.    Class certification of Plaintiff's claims for relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would be as a practical matter be dispositive of the interests of non-party Class members.

88.    Class certification of Plaintiff's claims for relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.  The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations.

89.    Additionally, and alternatively, class certification of Plaintiff's claims for relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to all Class members predominate over any questions affecting individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this action.

## COUNT I

**[Violation of the Terms of the Plan Pursuant to ERISA § 502(a)(1)(B) Against Westlake and the Plan]**

90.    Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

91.    ERISA § 501(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorities a participant or beneficiary of a plan to bring a civil action to recover benefits due under the terms of the

21

FIRST AMENDED CLASS ACTION COMPLAINT

plan, to enforce his/her rights under the terms of the plan, and to clarify his/her rights to future benefits under the plan.

92.  Pursuant to ERISA, an employee is entitled to her benefits in accordance with the terms of the Plan as of the date of her termination from employment.  A pension plan is a unilateral contract which creates a vested right in the employees who accept the offer by continuing in employment the requisite number of years. Upon termination, Defendants were required to determine benefits in accordance with the plan then in effect. Subsequent unilateral adoption of an amendment which is then used to defeat or diminish plaintiff's fully vested rights under the governing plan document is not only ineffective, but also arbitrary and capricious and precluded by ERISA § 204(g).  See *Kay v. Thrift & Profit Sharing Plan for Emps. of Boyertown Casket Co.*, 780 F. Supp. 1447, 1458 (E.D. Pa. 1991).

93.  Defendants' interpretation of the term "interim valuation" in the 2013 Plan to specifically grant Defendants the authority to call for a special valuation of Company Stock after the termination of participants in the first quarter of 2020 is not only incorrect, but it also is unreasonable, arbitrary, and capricious.  *See Pratt v. Petroleum Prod. Mgmt. Inc. Emp. Sav. Plan & Tr.*, 920 F.2d 651, 660 (10th Cir. 1990).

94.  Pursuant to the Plan terms Section 6(j) (segregation after eligibility and establishment of Post-Termination Benefits Account) and Section 11 (valuation based on the Anniversary Date or December 31), the benefits of Plaintiff and the Class should have been calculated based on the December 31, 2019 valuation for the 2019 Terminated Employee Participants and December 31, 2020 for the 2020 Terminated Employee Participants.  In addition, the 2019 Terminated Employee Participants should have received all dividends paid in April 2020, and the 2020 Terminated Participants should have received all dividends paid in April 2020 and April 2021.

95.  Defendants' application of the ineffective 2019 Plan to authorize a special valuation, use of the March 31, 2020, Special Valuation, and application of the amended 2019 Plan to mandate the segregation of company stock effective  March 31, 2020, violated

22

FIRST AMENDED CLASS ACTION COMPLAINT

the express terms of the 2013 Plan and resulted in an illegal cutback of the accrued and vested benefits of Plaintiff and the Class.

96.    Alternatively, Defendants' interpretation of the 2013 Plan to authorize a special valuation, to use the March 31, 2020 Special Valuation to determine the value of the Terminated Employee Participants account values, and to immediately segregate the company stock on March 31, 2020 (before even requesting a special valuation) were unreasonable and constituted an abuse of discretion and improper discrimination in favor of highly compensated participants such as the Individual Defendants in violation of Section 6 (k) of the 2013 Plan, and resulted in an illegal cutback of Plaintiff's accrued and vested benefits under ERISA Section 204(g).

97.    As a direct and proximate result of Defendants' violations of the terms of the Plan, Plaintiff and the Class have been harmed and have been deprived of benefits due under the Plan.

98.    Plaintiff and the Class are entitled to an order and judgment declaring that Defendants violated the terms of the Plan and ERISA and/or abused their discretion in administering the Plan, requiring Defendants to (i) calculate the benefits of Plaintiff and the Class using the correct valuation of the shares of Westlake stock, (ii) distribute any dividends that should have been distributed to Plaintiff and the Class, and (iii) pay Plaintiff and the Class all benefits and lost earnings due together with prejudgment and post-judgment interest, attorney fees, and costs.

99.    Accordingly, Plaintiff asserts this claim for herself and on behalf of the Class to enforce rights under the terms of the Plan and to recover those benefits due to them under the terms of the Plan.

FIRST AMENDED CLASS ACTION COMPLAINT

## COUNT II

### [Violation of the Anti-Cutback Provision of ERISA Sections 204(g) Against Defendant Westlake]

100. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

101. Section 204 (g) of ERISA, 29 29 U.S.C. 1054(g), provides that "[t]he accrued benefit of a participant may not be decreased by an amendment of the plan." Under 26 C.F.R. Section 1.411(d)-3(a)(1), "a plan amendment includes any changes to the terms of the plan."

102. An accrued benefit includes not only the "net effect" of the dollars earned and/or paid under the Plan, but also the features and elements of the benefit formula itself. As such, the accrued benefits protected from elimination by amendment under ERISA Section 204(g) includes the conditions on which the benefits are to be paid under the Plan.

103. Accrued benefits are considered decreased for purposes of ERISA Section 204(g) not only when they are reduced in size or eliminated entirely, but also when the plan imposes new conditions or materially greater restrictions on their receipt.

104. Under the terms of the 2013 Plan, a Terminated Employee Participant was not eligible to receive a distribution and was required to hold Westlake stock in his or her individual Plan account until the second quarter of the year subsequent to the year of termination.

105. The rights of Terminated Employee Participants alleged herein are accrued benefits under the 2013 Plan and could not be changed or reduced after the participants were terminated.

106. By implementing the Special Valuation and the mandatory segregation in 2020 pursuant to the ineffective 2019 Plan terms, Defendants decreased and eliminated accrued benefits of Plaintiff and the Class.

24

FIRST AMENDED CLASS ACTION COMPLAINT

107.   As a result, the implementation of the terms of the ineffective 2019 Plan constituted a prohibited cut back of benefits in violation of ERISA Section 204(g) as to Plaintiff and the Class.

108.   As such, Plaintiff and the Class are entitled to benefits for which they are eligible in conformity with the provisions of the Plan document as if the 2019 Plan and the amended segregation rules had not been implemented, as well as the payment of any benefits, lost investment earnings, dividends, interest, and distribution charges that may be owing.

109.   Plaintiff and the Class are also entitled to declaratory, injunctive, and other equitable relief, including but not limited to an order 1) declaring that Defendants violated ERISA Section 204 and applicable regulations and that Defendants' unlawful amendments never became effective; 2) enjoining Defendants from failing to pay Plaintiff and the Class their vested accrued benefits; 3) requiring Defendants to pay all benefits to Plaintiff and the Class and the lost earnings on those benefits; 4) disgorging any unjust enrichment received by Defendants, and reforming the Plan as necessary and appropriate together with pre-judgment an post judgment interest, attorney fees, and costs.

## COUNT III

**[Breach of Fiduciary Duty Under ERISA Sections 404(a)(1)(A), (B) & (D)  Against All Fiduciary Defendants]**

110.   Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

111.   ERISA Section 402, 29 U.S.C. 1102, requires every employee benefit plan to be in writing and specify the basis on which payments are made to or from the plan.

112.   A plan's fiduciary duties of loyalty and prudence include a duty to disclose and to inform.  These duties not only require that a fiduciary comply with the disclosure provisions in Title I of ERISA, but also entail: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence may be

25

FIRST AMENDED CLASS ACTION COMPLAINT

harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

113.   Defendants breached these duties as follows with regard to statements or omissions as follows:

a) Defendants misled the 2020 Terminated Employee Participants by promising in plan documents and other communications that Terminated Employee Participants would be eligible to have their benefits paid in the second quarter of 2021;

b) Defendants misled the 2020 Terminated Employee Participants by promising in plan documents and other communications that they would not segregate the Westlake stock of Plaintiff and the Class until they became eligible for distributions in the second quarter of 2021;

c) Defendants misrepresented that the Special Valuation was authorized by the ineffective 2019 Plan and that it was necessary to perform a special valuation in April 2020 due to the pandemic and also necessary to immediately segregate the Westlake stock of the 2020 Terminated Employee Participants effective March 31, 2020; and

d) Defendants failed to disclose that the one of the primary motives of the Special Valuation based on the amended 2019 Plan was to reduce the benefits only of the Terminated Employee Participants and limit the repurchase of obligations of the Plan and/or Westlake.

114.   By the acts and omissions complained of above, Defendants violated ERISA disclosure and written plan document obligations.  Plaintiff, members of the Class, and the Plan were harmed by Defendants' failure to honor their promises and representations.

115.   ERISA Section 404(a)(1)(D) requires a fiduciary to in accordance with the documents and instruments governing the plan, and the failure to follow the terms of the plan results in an operational failure that may subject the plan to disqualification should Defendants not remedy the failure.  Defendants breached their fiduciary duties by failing

26

FIRST AMENDED CLASS ACTION COMPLAINT

to follow the terms of the 2013 Plan and/or abused their discretion when they requested the Special Valuation and segregated the Westlake stock of the 2020 Terminated Employee Participants in 2020.

116.   As a proximate result of Defendants' violations of ERISA, Plaintiff, the Class, and the Plan were harmed by the failure of Defendants to (i) operate the 2013 Plan in accordance with its terms and the representations made to the 2020 Terminated Employee Participants regarding eligibility for distribution and segregation; and (ii) make material required disclosures necessary for Terminated Employee Participants to make timely, informed decisions regarding  retirement benefits, continued employment, savings, and decisions regarding whether and when to terminate their employment;  Plaintiff, the Class, and the Plan have  suffered losses and Defendants have been unjustly enriched.

117.   Plaintiff and the Class are entitled to declaratory, injunctive, and other equitable relief and remedial relief pursuant to ERISA § 409(a), including but not limited to, an order (i) declaring that Defendants violated ERISA's disclosure obligations and applicable regulations; (ii) ordering Defendants to pay all benefits wrongfully withheld, together with all other appropriate equitable and make-whole relief including surcharge of the Plan fiduciaries, disgorgement of any unjust enrichment received by Defendants together with prejudgment and post judgment interest, attorneys' fees, and costs.

## COUNT IV

**[Breach of Fiduciary Duty Under ERISA Section 404(a)(1)(A), (B), &(D) Regarding Sale of Westlake Stock Against All Fiduciary Defendants]**

118.   Plaintiff restates and re-alleges the foregoing paragraphs as if fully alleged herein.

119.   Defendants are fiduciaries to the Plan under ERISA § 3(21)(A), 29 U.S.C. 1002(21)(A), based on the discretionary authority and responsibilities they assumed and/or were granted for administering the Plan.

FIRST AMENDED CLASS ACTION COMPLAINT

120.   Defendants have a fiduciary responsibility to provide Plaintiff with adequate disclosures of any changes in the benefit plans and to administer the Plan in accordance with the documents and instruments governing the Plan and in accordance with ERISA.

121.   Defendants have a fiduciary duty to discharge their duties solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and beneficiaries; to make reasonable and adequate disclosures to Plan participants of the material terms and requirements in order to receive benefits under the Plan and the circumstances that could result in denial, loss, or forfeiture of eligibility for Plan benefits; and to comply with the terms of the Plan and other documents and instruments governing the Plan insofar as they are consistent with ERISA.

122.   The duties of loyalty under ERISA Section 404(a)(1)(A) and prudence under ERISA Section 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the participant receives adequate consideration for the assets in his or her account in the Plan.  Pursuant to ERISA Section 3(18), adequate consideration for an asset for which there is no generally recognized market, means the fair market value of the asset determined in good faith by the trustee or name fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor Regulations.

123.   Even if the March 31, 2020 Special Valuation were authorized by the Plan and not stale under the Code or the terms of the Plan, the decision to conduct the Special Valuation and immediately segregate the Westlake stock of Plaintiffs and the Class breached Defendants' fiduciary duties of prudence and  loyalty, and the valuation Defendants obtained and on which they relied did not constitute adequate consideration or fair market value at the time of the forced sale.

124.   In the event that the Defendants did not know or were not aware of facts regarding the inadequate valuation, they were required to undertake an appropriate investigation to make the determination concerning the adequacy of the consideration to fulfill their fiduciary duties.  An appropriate investigation would have revealed that the

FIRST AMENDED CLASS ACTION COMPLAINT

Special Valuation and immediate segregation of the Westlake stock of the 2020 Terminated Employee Participants did not reflect the fair value of Westlake stock.

125. By committing and/or allowing the above conduct, Defendants breached their ERISA fiduciary duties to Plaintiff and the Class by:

- failing to calculate and pay benefits and otherwise administer the Plan in accordance with the Plan terms and promises made to and on behalf of Plan participants;
- failing to pay dividends owed to the Terminated Employee Participants and retaining the dividends for their own accounts;
- administering the Plan in a non-uniform and arbitrary manner;
- failing to provide Plaintiff and the Class the disclosure of material information;
- misrepresenting benefit entitlements of Plaintiff and the Class;
- failing to conduct procedural prudence to evaluate whether to conduct a special valuation and/or whether to require immediate segregation of the Westlake shares of the 2020 Terminated Employee Participants;
- engaging in self-dealing and conflicted decision-making;
- failing to take steps to remedy breaches of fiduciary duty.

126. As a result of causing or permitting the segregation and forced sale of the Terminated Employee Participants' Westlake stock at the March 31, 2020, price, Defendants breached their fiduciary duties and caused losses to the Class Members' accounts and to the Plan.

## COUNT V

**[Engaging in a Prohibited Transaction Forbidden by ERISA Sections 406a)-(b) against the Trustee Defendant and Westlake]**

127. Plaintiff restates and re-alleges the foregoing paragraphs as if fully alleged herein.

29

FIRST AMENDED CLASS ACTION COMPLAINT

128. ERISA Section 406(a) requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange…between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

129. ERISA Section 406(b) mandates that a plan fiduciary shall not "in his individual or in any other capacity act in any transaction involving the plan on behalf of a party or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or deal with the assets of the plan in his own interest or for his own account," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

130. ERISA Section 408(e) provides a conditional exemption from the prohibited transaction rules in ERISA Section 406(a) for the sale of employer securities to or from a plan if the sale is made for adequate consideration. ERISA Section 3(18)(B) defines adequate consideration as the "fair market value of the asset as determined in good faith by the trustee or named fiduciary."

131. Defendants engaged in a prohibited transaction in violation of ERISA Sections 406(a) and (b) in the sale of the Westlake stock, and the prohibited transaction did not meet the conditional exemption requirements of ERISA Section 4089e). Defendants failed to ensure that Westlake paid no less than fair market value for the Westlake stock purchased by Westlake from Plaintiff and the Class. Specifically, Westlake paid less than fair market value for the repurchase of the shares of Plaintiff and the Class.

132. As a result of causing or participating in a prohibited transaction, the Defendants caused losses to Plaintiff and the Class Members' accounts and to the Plan, and have profited from the prohibited transactions.

FIRST AMENDED CLASS ACTION COMPLAINT

## COUNT VI

**[Invalidation of the 2019 Plan and Disgorgement Pursuant to ERISA Section 502(a)(3) Against All Defendants]**

133. Plaintiff restates and realleges the foregoing paragraphs as though fully alleged herein.

134. ERISA Section 502(a)(3) authorizes a plan participant to bring a civil action to (A) enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

135. By purchasing the shares of the Terminated Employee Participants, including the shares of John MacDonald, at a price that was more than $15 million less than the market value that should have been paid under the terms of the 2013 Plan and by failing to pay the Terminated Employee Participants their dividends of more than $11 million for April 2020 and April 2021, Defendants were unjustly enriched by millions of dollars.

136. Relief is unavailable under ERISA Section 502(a)(1)(B) because it does not provide for the remedies of disgorgement or surcharge relating to (i) the amount that Defendants have been unjustly enriched by paying Plaintiff and the Class less than the fair market value for their shares of Company stock; and (ii) the amount that Defendants have been unjustly enriched by receipt of the dividends paid in April 2020 and April 2021 that should have been paid to all participants whose employment was terminated in the first quarter of 2020.

137. In addition, relief is unavailable under ERISA Section 502(a)(1)(B) to (i) have the 2019 Plan declared invalid as to Plaintiff and the Class; (ii) declare that their rights and benefits are and will be determined under the 2013 Plan in effect when they terminated, and (iii) declare that the 2020 Terminated Employee Participants became eligible for their benefits in the second quarter of 2021 at which time Defendants were obligated to set up a

FIRST AMENDED CLASS ACTION COMPLAINT

Post-Termination Account and permit the 2020 Terminated Employee Participants to take their distributions based on the December 31, 2020 valuation of the company stock.

138.  As a matter of both federal common law and the common law of contract, which to ERISA plans, the terms of the Plan are fixed at the time of acceptance by the employee-participant, which is completed by performance.  At the latest, once an employee separates from employment, the terms of the pension plan in existence at the time of separation of employment are the terms that govern the benefits owed to and to be paid to the participant.

139.  The 2013 Plan was the effective Plan in existence at the time of the separation of employment of Plaintiff and the Class.

140.  Because the 2019 Plan was not properly amended in accordance with the requirements set forth in the 2013 Plan, the 2019 Plan never became effective.  As a matter of contract law, the 2019 Plan therefore is invalid and does not apply to the Terminated Employee Participants and cannot be used to justify Defendants' actions.

141.  Though the 2013 Plan did not authorize Defendants to request a special valuation, to the extent the 2013 Plan provided Defendants with any discretion to request a special valuation, change the valuation date, and/or amend the segregation and distribution policies of the Plan, Defendants abused their discretion and breached their duties of loyalty under ERISA Section 404(a)(1)(A) and prudence under ERISA Section 404(a)(1)(B) by (i) requesting a special valuation without an appropriate investigation, and (ii) immediately segregating the Company stock of the 2020 Terminated Employee Participants based on the terms of the ineffective 2019 Plan, thereby causing the repurchase of the shares of Plaintiff and the Class for less than adequate consideration and depriving Plaintiff and the Class of their share of the Westlake stock dividends.

142.  As a result, Plaintiff and the Class are entitled to (i) disgorge the profits made by Defendants as result of their receipt of company stock purchased for less than adequate consideration; (ii) disgorge the dividends received by Defendants that should have been

FIRST AMENDED CLASS ACTION COMPLAINT

paid to the Terminated Employee Participants; (iii) have the 2019 Plan declared invalid as to Plaintiff and the Class; and (iv) a declaration that their rights and benefits are and will be determined under the 2013 Plan in effect when they terminated their employment.

## COUNT VII

**[Violation of ERISA Section 404(a)(1)(A)&(B) Against Westlake and Individual Board Member Defendants]**

143.   Plaintiff restates and realleges the foregoing paragraphs as if fully alleged herein.

144.   Pursuant to Section 17(a) of the 2013 Plan, the Board of Directors of Westlake had the authority to appoint a Committee to administer the plan.  Pursuant to Section 17(c) of the Plan, the Committee is required to administer the Plan in a uniform nondiscriminatory manner for the exclusive benefit of the Participants and their Beneficiaries. The Committee is required to administer the Plan in accordance with its terms and has the power and discretion to interpret the terms of the Plan and determine all questions arising in connection with the administration, interpretation, and application of the Plan, including the power to determine the amount of the Plan Benefit to which a Participant or Participant's Beneficiary is entitled.  The Committee had the authority and obligation to make such rules, regulations, interpretations, discussions, and computations as may be necessary.

145. Pursuant to this authority, Defendant Westlake and Individual Board Defendants had a duty to monitor the conduct of the Committee Defendants, and to take appropriate action if those Defendants were not adequately protecting the interests of the Terminated Employee Participants.

146.   Upon information and belief, Defendant Westlake and the Board Defendants knew, or in the exercise of reasonable diligence, should have known that the Committee Defendants (i) had failed to conduct a reasonable investigation of the price of the Westlake stock; (ii) had failed to determine whether the segregation of the Westlake stock was

FIRST AMENDED CLASS ACTION COMPLAINT

consistent with the terms of the Plan document and representations made to Plaintiff and the Class; (iii) had failed to honor promises and representations in disclosures made to participants in the Plan regarding segregation; and (iv) had made misleading statements about the effectiveness of the 2019 Plan, authority of Defendants to call for a special valuation of the Westlake shares under the ineffective 2019 Plan, the reasons for the amended segregation policy, and the ineffective amendment to the Plan mandating the immediate segregation of the Westlake stock of the 2020 Terminated Employee Participants in the same year as their termination of employment.

147.   By failing to properly monitor and/or take appropriate action against the Committee Defendants, including the removal of the Committee Defendants, Defendant Westlake and/or the Individual Board Member Defendants breached their fiduciary duties by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (i) for the exclusive purpose of providing benefits to participants and their beneficiaries and (ii) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person action in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, all in violation of ERISA Sections 404(a)(1)(A) and (B).

148.   As a result of the breaches by Defendants Westlake and the Individual Board Member Defendants, the Plan suffered a loss and/or the participants who are members of the Class correspondingly also suffered losses to their individual accounts.

## ENTITLEMENT TO RELIEF

149.   By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiff and the Class, as plan participants and beneficiaries, are entitled to sue the Plan s pursuant to ERISA Section 502(a)(1)(B) for an award of benefits against the Plan and the Plan Administrator in the amount they would have received based on the December 31, 2019 valuation of $39.70 per share or the December 31, 2020 valuation of $41.95 per share, as well as and all applicable dividends declared by Westlake in April 2020 and April 2021.

34

150. By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiff and the Class, as plan participants and beneficiaries, are entitled to sue the fiduciaries pursuant to ERISA Section 502(a)(2) for relief on behalf of the Plan as provided in ERISA Section 409, including recovery for the Plan of any losses to the Plan resulting from each such breach and for such other equitable or remedial relief as the Court may deem appropriate.

151. By virtue of the violations of ERISA described in the preceding paragraphs, Plaintiff and the Class, are entitled to sue the fiduciaries pursuant to ERISA Section 502(a)(3), to (i) enjoin the ongoing breach of fiduciary duty, the ongoing violations of ERISA, and the ongoing practices identified above that violate the terms of the Plan, and (ii) obtain other appropriate equitable relief to redress such violations and/or to enforce provisions of ERISA and the terms of the Plan, including the disgorgement of the money received by Defendants that should have paid to the Terminated Employee Participants.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants, and each of them, on each Claim for Relief and for the following relief:

A. Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and her counsel as class counsel;

B. Declare Plaintiff and the Class are entitled to have their benefits calculated and/or paid in conformity with the terms of the Plan in effect at the time of their termination;

C. Declare that the fiduciary Defendants, and each of them, have breached their fiduciary duties to the Class and/or knowingly participated in breaches of fiduciary duty;

D. Enjoin Defendants, and each of them, from further violations of their fiduciary responsibilities, obligations, and duties;

35

FIRST AMENDED CLASS ACTION COMPLAINT

E. Order that Defendants make good to the Plan and/or any successor trust(s) the losses resulting from their breaches and restoring any profits they have made through use of assets of the Plan;

F. Order that Defendants provide other appropriate equitable relief to the Plan, Plaintiff, and the Class, including but not limited to surcharge, rescission, reformation of the Plan, providing an accounting for profits, imposing a constructive trust and / or equitable lien on any funds wrongfully held by Defendants, or any of them;

G. Invalidate the 2019 Plan or reforming the terms of the ESOP to eliminate the applicability of the 2019 Plan as to any of the Terminated Participant Employees;

H. Require Defendants to make good any losses suffered by Plaintiff and the Class from the March 31, 2020 Special Valuation and segregation of the Westlake stock held in their individual accounts in the Plan and disgorge to Plaintiff and the Class any profits they have made from the forced sale;

I. Remove the members of the Committee from their role as fiduciaries of the Plan, enjoining any of the breaching fiduciaries from acting as fiduciaries for any plan that covers the employees of Westlake and appointing an Independent Fiduciary to manage the Plan;

J. Order the proceeds of any recovery for the Plan to be allocated to the Class to make them whole for any injury that they suffered as a result of the breaches of fiduciary duty in accordance with the Court's declaration with respect to the terms of the Plan;

K. Order pursuant to ERISA Section 206(d)(4) that any amount to be paid to or necessary to restore Plaintiff's Plan account can be satisfied by using or transferring any breaching fiduciary's Plan account to the extent of his or her liability;

36

L.  Award Plaintiff her reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g) and/or for the benefit obtained for the common fund;

M.  Order Defendants to pay prejudgment interest; and

N.  Award such other and further relief as the Court deems equitable and just.

Dated: March 4, 2024

Respectfully submitted,

**MILLER SHAH LLP**

/s/ *Ronald S. Kravitz*
RONALD S. KRAVITZ
456 Montgomery, Suite 1900
San Francisco, CA 94104
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
rskravitz@millershah.com

*Counsel for Plaintiff*

37

FIRST AMENDED CLASS ACTION COMPLAINT